## Dunlap, County Clerk v. Littell, Tax Commissioner.

(Decided October 26, 1923.)

### Appeal from Grant Circuit Court.

1. Statutes—When Considered to be "In Pari Materia."—Statutes are considered to be "in pari materia" when they relate to the same matter with an apparent or actual conflict in some or all of their provisions.

2. Statutes—Doctrine of Pari Materia Invoked to Give Later Statute Retroactive Effect.—The doctrine of pari materia has never been invoked to give the later statute a retroactive effect, so as to apply to and operate upon conditions arising before its enactment; the sole purpose of the rule being to enable courts to apply the intention of the legislature to conditions arising after all the statutes involved have become laws.

3. Statutes—Not Given Retroactive Effect Unless Intention Clearly Appears.—Statutes are not to be given a retroactive effect, even where the legislature has power to enact them, unless such an intention clearly and unmistakably appears from the statute itself.

4. Statutes—Statutes May Not Operate so as to Impair Prior Rights.—Retroactive statutes, even where permissible, may not operate so as to impair prior acquired rights.

5. Taxation—Tax Commission Held Not Entitled to Fees for Listing Dogs.—Acts 1918, chapter 112, giving to county assessor 10 cents each for listing dogs, could not be given a retroactive effect as being in pari materia so as to entitle a county assessor who became tax commissioner under Acts 1918, chapter 11, now Ky. Stats., sections 4042a-1 to 4042a-15, to receive such compensation during his term of office, because it would impair the rights of the people to the services of such commissioner for listing dogs without compensation, as was true at the time he was elected assessor and also when clothed by the legislature with the office of tax commissioner, in view of Acts 1906, chapter 10 (Ky. Stats., section 68a, up to 1918).

6.    Taxation—Statute Requiring Listing of Dogs Held Not to Impose
      New Duties for which Tax Commissioner Entitled to Extra Com-
      pensation.—Acts 1918, chapter 112, providing for the payment of
      10 cents to the county assessor for each dog listed while assess-
      ing property for taxation, did not impose new duties upon the as-
      sessor, or county tax commissioner, and could not be construed to
      apply to a tax commissioner, in office at the time of its passage,
      as to do so would render it a violation of Constitution, sections
      161, 235, relating to increases in compensation of officers during
      their term in view of Acts 1906, chapter 10 (Ky. Stats., section
      68a, up to 1918).

CHARLES I. DAWSON, Attorney General, and MARTIN T.
KELLY, Assistant Attorney General, for appellant.

MORRIS & JONES for appellèe.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee and plaintiff below, T. R. Littell, was
duly elected to the office of assessor of Grant county at
the regular election in 1917 and took the oath of office, as
provided by law, on the first Monday in January, 1918.
The legislature convened in regular session on the first
Monday of the latter year, and on March 15, thereafter
it enacted chapter 11, Acts 1918, page 31 (now sections
4042a-1-4042a-15, inclusive, of the 1922 edition of the stat-
utes), whereby the office of county assessor was abolished
under the power conferred by section 104 of the Consti-
tution, and in lieu thereof the office of County tax com-
missioner was created. The prescribed duties of the
newly created office were the same as theretofore per-
formed and exercised by the abolished office. The county
tax commissioner was made an elective officer to be
elected at the same time that county assessors had there-
tofore been elected, but the act conferred the duties of
the newly created office upon the then existing assessors
for the various counties of the Commonwealth until the
next regular election in 1921, and its tenure was made
the same as that of the abolished assessors. If the legis-
lature had the power to fill the created office with the then
assessors of the counties until the 1921 election (a ques-
tion not now decided), the effect of the act was to *ipso
facto* clothe the new county tax commissioners with all
the powers, duties and obligations of the county assessors
then in office immediately upon the taking effect of that
act, and in the same manner it bestowed upon the county

tax commissioner all the perquisites of the office of the abolished county assessors, no more and no less. The act had an emergency clause and took effect and became a law on the date of its approval, March 16, 1918.

At that time chapter 10, Acts 1906, page 25 (which was section 68a of the Kentucky Statutes up to 1918), was the only law in this Commonwealth authorizing the assessment of dogs for taxation, and under its provisions it was the duty of the county assessor to assess dogs at the same time he assessed other property, and for which services there was no provided compensation, and the duty of the county assessor to assess dogs without compensation was the law at the time plaintiff was elected assessor in 1917 and at the time he became county tax commissioner under the 1918 act, *supra*. At the same 1918 session the legislature enacted chapter 112, 1918 Acts, page 483, which was an entirely new law with reference to the assessment of dogs, and it supplanted the 1906 act on that subject. That act was approved March 28, 1918, and had no emergency clause, which postponed its taking effect and becoming a law until ninety days after the adjournment of the session. Section 4 of that act provided that the owner of each dog should in person apply to the county court clerk of his county on or before January 1 each year thereafter and obtain a license for each dog owned by him according to the scale therein fixed, and section 16 provided that the assessors of each county at the time of assessing property for taxation should inquire of each person assessed the number of dogs owned by him and make a list of them and to afterwards furnish a copy of it to the county court clerk of his county and one to the state commissioner of agriculture, and further provided that he should receive as compensation for such listing ten cents for each listed dog. It will be observed that the latter act seems to ignore the fact that the office of tax assessor had been abolished, since it provided that the listing of dogs therein required should be performed by "the assessors in each county," instead of by the newly created office of county tax commissioner. But, whether that fact should have any bearing upon the question here involved, we need not determine, except in so far as it may throw light on the question that the legislature regarded the two officers as being one and the same with only a change in name.

By chapter 157, Acts 1920, page 676, sections 15 and 16 of the latter 1918 act were repealed and re-enacted and it was therein provided that the county tax commissioner should receive as compensation for listing dogs only five cents per head instead of ten cents, as provided by the amended act. At that time plaintiff was serving his county as county tax commissioner under his installation into that office by the first 1918 act, and would continue to do so until the first Monday in January, 1922, when his successor, elected at the regular election 1921, would succeed him. After finishing his assessments for the year 1920, he presented to the county court clerk of Grant county his claim for $100.30 for listing 1,003 dogs in the county at ten cents per head, which was after the taking effect of the 1920 act. The county court clerk refused to pay him exceeding five cents per dog listed by him, and he filed this action in the Grant circuit court against the county court clerk (appellant and defendant below) praying that he be mandamused and ordered to pay the claim at the rate of ten cents per listed dog. His petition averred the facts, as hereinbefore recited, and defendant filed a demurrer thereto, which the court overruled and entered judgment according to the prayer of the petition, which defendant seeks to reverse by this appeal.

It is the contention of the Attorney General, who briefed the case for the defendant, that the court erred in overruling the demurrer to the petition because (1), chapter 11, Acts 1918, created a new county office which it could not fill by appointment, since that would be the exercise of executive or ministerial powers by the legislature contrary to the provisions of sections 27 and 28 of the Constitution, as was held by this court in the case of Breckinridge v. Pratt, 112 Ky. 1, and in the more recent one of Sibert v. Garrett, 197 Ky. 17; (2) that if correct in reason (1), then plaintiff was only a *de facto* officer at the time he performed the services for which he claims compensation, and that while the acts of such an officer are valid as to third persons he is not entitled to the emoluments of the office and may not enforce the collection of its attached salary or accompanying fees, as was held by this court in the cases of Eubanks v. Montgomery County, 127 Ky. 261, 128 Am. Rep. 340, 16 Ann. Cas. 483, and Nagel v. Bosworth, 148 Ky. 807; and (3), that whether plaintiff continued to act as assessor of his county after the creation of the office of county tax com-

missioner, or to act in the capacity of the latter officer after that time, it was not within the power of the legislature to change his salary or the fees of his office after his installation either by increasing or by diminishing it, or them, and on that account he was not entitled to even the ten cents provided for the listing of dogs by the later 1918 act, and not being so he can not complain of the reduction of the fees for that service made by the 1920 act; and in support of the third position the cases of James, Auditor v. Duffy, 140 Ky. 604; Green v. Cohen, 181 Ky. 108, and Neutzel v. Fiscal Court of Jefferson County, 183 Ky. 1, and many others from this court are cited.

Counsel for plaintiff make no reference in their brief to reasons (1), and (2), urged by the Attorney General, nor do they deny the correctness of reason (3), but seek to *avoid* it by insisting (a), that the first 1918 act abolished the old office of county assessor and created the new one of county tax commissioner, and that the second 1918 act providing for the fee of ten cents for each dog listed by the incumbent of the newly created office having been passed at the same session of the legislature must, under the *pari materia* doctrine, be read in connection with the prior act creating the office and be construed as a part of it as though the later act had been passed at the same time, and by reason thereof all of its provisions were thereby incorporated into and became parts of the first act; and being so, they then argue that plaintiff's right to collect the ten cents fee for the services rendered became and was a part of the emoluments of the office of county tax commissioner at the instant he became such, and that his right to thereafter charge and collect the fee continued throughout the period of his legislative designation and could not be changed or altered by the legislature at any time, under the doctrine of the cases, *supra*, during that period, and as a consequence the 1920 act was inoperative as to him.

They further urge in avoidance of contention (3) made by the Attorney General, (b), that the later 1918 Act, imposing the duty on the county assessors to make a list of the dogs in their county, imposed *new* duties for which plaintiff was entitled to additional compensation under the opinion of this court in the case of James v. Cammack, 140 Ky. 604, and that, since the 1920 act reducing the fees for the services rendered did not change or alter

those duties the originally provided fees for the same services should prevail throughout the term of plaintiff's legislative designation. Because of the conclusion we have reached, it will be unnecessary to discuss reasons (1) and (2), urged by the Attorney General, and we shall devote no part of this opinion to them; and since reason (3), is fully supported by the Duffy, Cohen, Neutzel and other cases, *supra,* and its correctness as an abstract principle of law is conceded by plaintiff's counsel, the only points necessary for a determination of the case are (a) and (b) urged in avoidance thereof.

In passing upon avoidance, (a), it will be unnecessary to determine whether chapter 11 of the 1918 Acts abolished the office of county assessor immediately upon its taking effect and *eo instanter* created the office of county tax commissioner, or whether the office of assessor was continued until the next succeeding election with only the name of the office changed, since in either event the legislature, under the cases, *supra,* could not change the emoluments of the office, unless a new one was created by the act and the second one became a part of it from the beginning under the *pari materia* doctrine. That doctrine is one of construction and its primary meaning is "upon the same matter," *i. e.,* that statutes are considered to be *in pari materia* when they relate to the same matter with an apparent or actual conflict in some or all of their provisions. In an endeavor to interpret and apply the statutes that doctrine is invoked by the courts for the purpose of ascertaining the intention of the legislature in the enactment of the later one and to ascertain how far it qualifies or modifies the first one, as contemplated by the legislature in the enactment of both. The doctrine is especially applicable to acts passed at the same session of the legislature, and it is frequently said in the opinions that the acts should be *construed* together, so as to harmonize and effectuate the purpose of the legislature in the enactment of both. But the doctrine has never been invoked to give the later statute a retroactive effect so as to apply to and operate upon conditions arising *before* its enactment and taking effect and at the time of, or after, the enactment and taking effect of the first statute on the same subject. The sole purpose of the rule of construction embodied in the doctrine is to enable courts to apply the intention of the legislature to conditions arising after *all* the statutes involved have become laws, and

when it becomes necessary to ascertain and apply the intention of the legislature to subsequently arising conditions from what may be gleaned by considering them collectively after they have taken effect. To hold that the observance of the doctrine would require the giving of a retroactive effect to the later statute would be a perversion of the true office of the doctrine and wholly unwarranted and outside of its scope and purpose.

An illustration of such application may be found in the case of Lambert, Mayor v. Board of Trustees Public Library, etc., 151 Ky. 725. In that case two conflicting acts were passed at the same session of the legislature with reference to public libraries in cities of the third class. One of them had an emergency clause and the other did not, and, notwithstanding they were passed at the same session, we held that where the conflict between the two was such that they could not be harmonized the one containing the emergency clause would overcome the other. But, in that case the opinion dealt with conditions which arose after *both* acts become effective. See also Lewis' Sutherland Statutory Construction, vol. 2, section 443, as showing the *prospective* operation of the *pari materia* doctrine and wherein the learned author says: "All consistent statutes which can stand together, though enacted at different dates, relating to the same subject, and hence briefly called statutes *in pari materia,* are treated *prospectively* and construed together as though they constituted one act. This is true whether the acts relating to the same subject were passed at different dates, separated by long or short intervals, at the same session or on the same day."

Moreover, statutes are not to be given a retroactive effect even where the legislature has power to enact them, unless such an intention clearly and unmistakably appears from the statute itself. 25 R. C. L. 786-788, and Ferlage v. Supreme Tribe of Ben Hur, 153 Ky. 645. This precautionary rule of interpretation is thus stated in the reference to R. C. L.: "While the Constitution of the United States and the constitutions of many of the states contain no provisions directly forbidding retrospective laws, such laws are void if they impair the obligation of contracts or vested rights. Even though the legislature may have the power to enact retrospective laws, a construction which gives to a statute a retroactive operation is not favored, and such effect will not be given unless it

is distinctly expressed or clearly and necessarily implied that the statute is to have a retroactive effect. There is always a presumption that statutes are intended to operate prospectively only, and words ought not to have a retrospective operation unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied. Every reasonable doubt is resolved against a retroactive operation of a statute.''

It will be observed that retrospective statutes, even where permissible, may not operate so as to impair prior acquired rights. There is nothing in our Constitution forbidding the enactment of such statutes, but we find nothing in the later 1918 act that would authorize us, under the rule, *supra,* to conclude that the legislature intended to give it a retroactive effect so as to become a part of the statute passed at the same session abolishing the office of county assessor. If, however, it were otherwise then the retroactive intention of the legislature could not be given effect in this case, because it would operate to impair the rights of the people of the various counties to the services of plaintiff for listing dogs without compensation therefor, as was true both at the time he was elected assessor and at the time he was clothed by the legislature with the office of county tax commissioner, and the supposed retroactive effect of the statute would not only be void in this case for that reason, but would likewise be void as to him under the provisions of sections 161 and 235 of the constitution as construed by the cases, *supra,* unless his rights are to be governed by the principles announced in the Cammack case, *supra,* which brings us to a consideration of avoidance (b), made by his counsel.

The difference between the facts in plaintiff's case and those involved in the Cammack case is clearly pointed out in the Cohen case, which latter was one whose facts were very similar to those involved here, except if any different they were more favorable to the right of plaintiff to the fees involved than is true in this case, where the second 1918 act imposed no substantial new duties. It is pointed out in that case that it is competent for the legislature to impose new duties on an incumbent in office without additional remuneration to him during that term, provided the new duties are such as may be required of the incumbent of the particular office, and which strictly

appertain to it. In each of those cases the alleged increased duties came within that class (as is true here, if there were any) and the increased compensation contended for was disallowed. In the Cammack case, as pointed out in the Cohen opinion, there were no imposed increased duties by the subsequent statute which appertained to the office of circuit judge or could be required by the incumbent of that office. He was required by the later act, and for which the increased compensation was given, to go out of his district and hold court for other circuit judges who were disabled or otherwise disqualified from presiding, and the act then under consideration designated him while so acting as "special judge" for the particular court over which he presided, and, as said in the Cohen case, "It will be observed that that case is in principle radically different from the Duffy case and from the case at bar." Whether that reasoning be sound or unsound we need not determine, since the Cohen and the Neutzel cases, which are practically on all fours with this one, deny plaintiff's right to recover the contested fees.

From what has been said the conclusion is irresistible that plaintiff had no right under the law to collect any part of the ten cents fee, provided for in the later 1918 act, during the term for which he was then the incumbent, whether he be regarded as serving as assessor or as tax commissioner for the county, since, under the sections of the Constitution, *supra*, that act could apply to only succeeding terms commencing after its passage and taking effect, which, as we have seen, can not be retrospectively precipitated under the *pari materia* doctrine. That being true the legislature could during the same term of office repeal either entirely or *pro tanto* the statute allowing the fees without invading any of plaintiff's rights. It did the latter by the enactment of the 1920 statute, and for the reasons stated he has no legal cause to complain.

Wherefore, the judgment is reversed with directions to sustain the demurrer filed to the petition and for proceedings consistent with this opinion. Whole court sitting.