ISADORE PREVESLIN *vs.* THE DERBY AND ANSONIA DEVELOPING COMPANY.

Third Judicial District, Bridgeport, April Term, 1930.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

130

Argued April 15th—decided October 3d, 1930.

*George E. Beers* and *William L. Beers,* with whom, on the brief, was *Louis Sperandeo,* for the appellant (defendant).

*Patrick B. O'Sullivan,* with whom, on the brief, was *William F. Healey,* for the appellee (plaintiff).

*Ernest L. Averill,* Deputy Attorney-General, with whom, on the brief, was *Benjamin W. Alling,* Attorney-General, argued the cause as *amicus curiae.*

WHEELER, C. J. We think the subordinate facts fully support the conclusions reached by the commissioner: The defendant was the principal employer in the erection of certain houses and as such procured through its agent Ratner certain work to be done in the construction of these houses which was a part or process in the trade or business of this employer and the defendant at all times retained the premises under its control. The plaintiff-claimant while at work on one of these houses sustained a personal injury arising out of and in the course of his employment. His in-

jury arose, the commissioner held, under such circumstances as to make the defendant and its officers and directors individually and jointly and severally liable to the claimant for the results of the injury. The commissioner adjudged that the respondent pay the plaintiff $21 a week, "until it shall be shown that the incapacity which the claimant now experiences because of the aforesaid injury has increased, decreased or ceased, but not for longer than the statutory period of five hundred and twenty weeks," together with such additional hospital and kindred bills as shall be necessary as a result of this injury. The commissioner determined the award under the rate of compensation provided by Chapter 307 of the Public Acts of 1927.

The trial court affirmed the award except as to its amount and as to this reserved the questions arising on reasons of appeal thirteen to sixteen inclusive for our advice.

Reason thirteen is as follows: "The commissioner erred in determining the rate of compensation provided in that he applied the provisions of an unconstitutional Act, to wit, the Public Acts of 1927, Chapter 307, being an Act not approved within the time required by the Constitution of this State and in particular by section 12 of the Fourth Article thereof, and failing to apply the rule of the constitutional statute, viz, the Act of 1919."

The session of 1927 of the General Assembly ended May 6th and Chapter 307 of the Public Acts was approved by the Governor on June 8th following. The constitutional provision, § 12, Article Fourth, providing for the approval by the Governor of an Act passed by the General Assembly after its adjournment, we quote in the opinion in *State* v. *McCook*, 109 Conn. at page 641. We there held that Acts approved by the Governor after the expiration of "three days, Sundays

excepted," from the adjournment of the General Assembly are void. We used the word void in the sense that such Acts are of no legal effect, and not in the sense that they are voidable. There would be no occasion to reconsider the holding in that case were it not that the Attorney-General, as *amicus curiae* in the performance of his duty, discusses in brief and argument certain features involved in the decision of this constitutional question which he says appear not to have been discussed in the former argument of the *McCook* case.

The chief feature of his argument is his claim that the Governor under this Article of the Constitution is given authority to approve bills which the adjournment of the General Assembly has prevented him from returning to it, whenever these bills are presented to him. In the *McCook* case we say: "If he [the Governor] can sign one bill on the last secular day preceding the next General Assembly he can on that day sign all bills presented to him on final adjournment of the General Assembly. That situation would be intolerable." The construction accorded this provision of the Constitution in that case, obviously, was largely influenced by the grave public abuse which might follow "the possession and use of this extraordinary power" by a Governor. That might be used to defeat good laws as well as to promote those which are bad. Whatever the purpose the people would not know what these laws were. "It is of the first importance that the people should know to what law they are subject." *State ex rel. Corbett* v. *South Norwalk,* 77 Conn. 257, 261, 58 Atl. 759.

Since our decision in the *McCook* case the presentation plan of construction has been supported by discussion in apparent disregard of the fact that the adoption of that construction without a definite limi-

tation as to the time of presentation inevitably leads to the according of an unlimited period for presentation, measured only by the beginning of the next session of the General Assembly, although the argument at the beginning of the discussion strongly controverted and discarded with finality the theory of an unlimited period for presentation, presumably for the reason assigned in the *McCook* case that it would invite "an intolerable situation."

The Attorney-General with better logic frankly concedes that the presentation to the Governor may be made at any time after the adjournment of the General Assembly, and even up to the beginning of its next session. Under no other construction of this constitutional provision which has been presented to us in this case, or in the *McCook* case, could the approval of a bill by the Governor, nineteen days after adjournment in the *McCook* case, in this case thirty-two days after the adjournment, be upheld as within Article Fourth of our Constitution. The legislative understanding, long maintained, conflicts with the position of the Attorney-General. Section 38 of the General Statutes provides that all bills which shall have been passed by both houses, but which shall not have been engrossed prior to final adjournment of the General Assembly, shall be transmitted to the Governor for his approval, and the secretary shall then engross the bills and the engrossed bills shall then be signed by the proper officers including the Governor. The statute further provides that these bills after their approval shall have the same validity as other statutes. This provision clearly indicates that these bills become laws when signed and approved by the Governor and before they are engrossed. The Act does not specify a definite time for their signing. The declaration of the legislative procedure and purpose is the recognition of the

constitutional fact that § 12 of Article Fourth of the Constitution prohibits the presentation to, or approval or disapproval of a bill by, the Governor after the adjournment of the General Assembly and the expiration of the three-day period at any time up to the beginning of its next session. It is an expression of their understanding as to bills passed but not engrossed before final adjournment that the original bills must be transmitted to the Governor for his approval, which must be manifested prior to their being transmitted to the secretary and thereafter engrossed.

For nearly one hundred years the General Assembly has determined the date when its Acts should take effect, fixing this time at the rising of the General Assembly, or a designated number of weeks thereafter, or on a specified date, in no instance exceeding three months from its rising. From 1877, § 38 of the General Statutes, in practically its present form, has required that Acts not returned by the Governor to the General Assembly because it had prevented their return by its adjournment must within this period have been presented to the Governor, considered and if approved by him, subsequently engrossed and the copy thereof duly endorsed, and the Acts have thereupon been printed in book form. It is manifest that the General Assembly must have understood that the Governor must approve of the Acts shortly after the rising of the General Assembly and that the presentation to the Governor could not be deferred for the period claimed by the Attorney-General, extending up to the session of the next General Assembly.

In the forty-four sessions of the General Assembly just prior to 1919—a period covering sixty years—in only four were a few bills signed and approved by the Governor after the expiration of the "three days, Sundays excepted," succeeding the adjournment of the

General Assembly. This plainly shows the executive usage and refutes the theory of the Attorney-General. Up to 1919 the legislative purpose and the executive purpose were in harmony. Since that period the legislative purpose continues while the executive purpose as indicated by the course of official conduct has departed from the constitutional and executive usage of the period prior to 1919, and from the legislative usage which has held, unchanging, to the present.

We are assured by the Attorney-General that it has not been in recent years the practice for the Governor to sign the original bills which the adjournment of the General Assembly has prevented him from returning, and that the presentation of these bills to him has been deferred, as a practice, for the purpose of first procuring their engrossment. The *McCook* case concerned an Act passed in 1925. Of the Public Acts of that session seventy-four were signed by the Governor nineteen days after, and thirty-eight, twenty days after the adjournment of the General Assembly, while eight were signed between eight and nineteen days after adjournment. Of the Public Acts of 1927, only three were signed within the three days after adjournment, and up to June 4th four, while on June 7th, twenty-nine days after the three-day period, fifty-seven were signed and on the following day, thirty days after the three-day period, sixty-two were signed, while two were signed on July 7th, nearly two months after this period.

Assuming, as we do, that the Attorney-General is correct as to this fact of presentation, this record discloses, not only a failure on the part of the proper officials to present these bills to the Governor within the period prescribed by the Constitution, but also a failure to comply with the provisions of § 38 which require the presentation to the Governor of all bills which have passed both houses "but which shall not

have been engrossed prior to the final adjournment thereof."

The Attorney-General further states that from 1860 to 1876 as a rule the statutes provided that bills passed by both houses should be forthwith transmitted to the Governor, and in one or two instances specified that they should be submitted to him prior to adjournment. In 1876 the words "forthwith" and "prior to adjournment" were omitted from the statute and substantially the present form of § 38 has been followed ever since.

In the light of the construction we have given to § 12 of Article Fourth we think it essential that the presentation of these bills should be made forthwith following adjournment of the General Assembly and that "transmitted" in § 38 construed in connection with this constitutional provision requires a like construction. The Governor would thus have the full three-day period for the consideration of these bills. Bills passed in the last days of the session, which could not be engrossed so as to permit them to be returned by him within the three-day period, should also be forthwith presented to him after enactment. The three-day period is inadequate for a full consideration of these bills; the practical remedies suggested by us in the *McCook* case, if availed of, will give the Governor sufficient time for a reasonable consideration of these bills and give the General Assembly a better opportunity to know something of the mass of legislation which is now passed upon in the final days. Under conditions of legislative practice, such as exist at present, it is not an impossible feat for the Governor to consider these bills and if he approve of them sign them if presented to him forthwith upon adjournment. In his message to the special session of the General Assembly the Governor states that he approved of nearly all of these bills for Public Acts of the years 1925 and 1927, in two

days, and within three days of their presentation to him.

Section 38 contemplates that the bills when passed shall be in such form that they may be forthwith transmitted to the Governor and that they may be in such reasonable form that he may consider them. Failure to comply with the provisions of the law for the presentation of these bills to the Governor is plainly manifest; if in addition legislative practices may have crept in, as the Attorney-General asserts, making approval in unengrossed form difficult or impracticable, these may not be used as excuses for their perpetuation but should be corrected to the end that this constitutional provision shall be carried out.

There is no possibility of construing this Article as requiring the Governor to sign these bills within the three-day period after presentation and at the same time avoiding the danger of permitting the presentation to be made within the unlimited period maturing upon the beginning of the next session of the General Assembly, unless the presentation is required to be made forthwith, upon the final adjournment of the Assembly. The adoption of this construction of presentation, and construing this Article to require the Governor to approve of these bills within "the three days, Sundays excepted," after their presentation to him would reach the same result reached in the *McCook* case and leave all bills approved after the three-day period void and open to immediate attack.

Two other constructions of the language, "unless the General Assembly, by their adjournment, prevents its return, in which case it shall not be a law," are possible.

1. That it relates exclusively to disapproved bills— an untenable construction since it necessarily places no limit upon the time in which the Governor may approve.

2. That no approval or disapproval of a bill can be made after the adjournment. We reject this construction primarily because it would void all bills which had not been presented to the Governor before the adjournment and take from him the qualified veto power given him by our Constitution.

Chapter 307 of the Public Acts of 1927 was an amendment to Chapter 247 of the Public Acts of 1925, Chapter 306 of the Public Acts of 1921 and Chapter 142 of the Public Acts of 1919. Under the rule of the *McCook* case all of these Acts except that of 1919 we must hold to be unconstitutional for the reason that none were approved by the Governor within the three-day period after the adjournment of the General Assembly.

We omit discussion of other matters advanced by the Attorney-General because of the necessary limits of this opinion; after consideration we find none of these justify a change in the conclusions reached or the views expressed.

The plaintiff's contention that the constitutionality of the Act of 1927 was not raised before the commissioner or in the pleadings in the trial court and therefore cannot be raised in this court is without merit; the constitutionality of this Act was raised upon the argument of the case in the trial court, and the additional reasons of appeal covering this point were offered at the time of final hearing and allowed by the court and the case upon these reasons of appeal reserved by that court. The *McCook* case had not been decided at the time the case was pending before the commissioner. Under these circumstances the issues raised by these reasons of appeal are properly before us for our advice.

The rule of law promulgated in *State* v. *Carroll*, 38 Conn. 449, 472, is still the law of this State and of this land. "Every law of the legislature," we assert, "how-

ever repugnant to the Constitution, has not only the appearance and semblance of authority, but the force of law. It cannot be questioned at the bar of private judgment, and if thought unconstitutional resisted, but must be received and obeyed, as to all intents and purposes law, until questioned in and set aside by the courts. This principle is essential to the very existence of order in society. It has never been questioned by any jurist to my knowledge."

Yet the unconstitutional statute may be attacked in any proper case and if in that case this court finds it to be unconstitutional it will determine that particular case and establish a rule of law which will govern all cases to which it is applicable which our courts may later be called upon to adjudicate when so attacked.

The *McCook* opinion was handed down on July 25th; on the following August 6th the General Assembly met in special session called by the Governor and passed five bills, which were duly approved by the Governor, the chief intent of which was to validate all Acts which might thereafter be declared void under the authority of that case. None of these bills re-enacted each of the bills which they intended to validate separately.

Under *Water Commissioners* v. *Curtis*, 87 Conn. 506, 508, 89 Atl. 189, "neither independent re-enactment nor enactment by repetition of the language of the Special Act was necessary."

The course taken in the passage of these bills was not in conflict with § 32 of the General Statutes since these bills did not purport to amend or repeal prior bills but to validate them and acts done thereunder. Moreover, one legislature cannot control the exercise of the powers of a succeeding legislature. From the time of the re-enactment of these statutes they were thereafter valid statutes as to all acts and measures fulfilled

in compliance with their terms so far as their due enactment is concerned.

The validation of the Act before us is open to at least two constitutional objections. Chapter 307 of the Public Acts of 1927, and the preceding Acts of 1925 and 1921, which purported to fix the compensation to be awarded in a case such as the present one, under analogous situations having been determined to be void upon the principle announced in the *McCook* case, the first Act preceding the Act of 1927 which fixed the compensation of the plaintiff in this case and was approved by the Governor in accordance with § 12 of Article Fourth, was Chapter 142 of the Public Acts of 1919. The compensation under the Act of 1919 was substantially less than that under the Act of 1927, the later one being to the pecuniary disadvantage of the defendant. The validation of the Act of 1927 if effectual would thus increase the amount the defendant would be required to pay over that required by the Act of 1919. The defendant's right of defense, which affected its substantial interests, became fixed in present enjoyment and available to the defendant under the statute in effect at the time of the injury and definitely ascertained upon the determination of the *McCook* case. It was a property right which vested in the defendant and for whose protection against legislative invasion in the form of a validating act or otherwise it could rely on Article First of our State Constitution and upon the Fourteenth Amendment of the Federal Constitution.

In *Travelers Ins. Co.* v. *Ohler* (Nebraska) 227 N. W. 449, 450, it was held: "A legislative act will not be permitted, even if an attempt so to do is disclosed, to operate retrospectively where it will have the effect to invalidate or impair the obligation of contracts or interfere with vested rights." Ruling Case Law, Vol.

6, page 362, states the rule to be: "But the legislature has no power by a subsequent curative statute to remedy a jurisdictional defect, or one which goes to the substance of a vested right." See also 2 Cooley, Constitutional Limitations (8th Ed.) 771, 745; *Dunlap* v. *Littell,* 200 Ky. 595, 255 S. W. 280. The only "vested right" which will be protected by these constitutional provisions is one which rests upon equities and has regard for general welfare and public policy. The right of this defendant to have the compensation determined by the Act of 1919 rather than to have it determined by the greater measure of compensation accorded by the Act of 1927, is a vested right of this character because it accrued prior to the passage of the Act of the Special Session.

The Compensation Act of this State is contractual. General Statutes, § 5227; *Powers* v. *Hotel Bond Co.,* 89 Conn. 143, 145, 93 Atl. 245. The contract between plaintiff and defendant began with plaintiff's employment. The contract is to pay and accept such compensation as is prescribed by statute in effect at the date of the injury. Any legislation which purported to change a substantial term of this contract operative at the time of plaintiff's injury passed subsequent to its making would impair its obligation and fall within the ban of Article First of the Constitution of Connecticut and of Article First, § 10, and the Fourteenth Amendment of the Federal Constitution. In holding an Act, as applied to a contract of insurance, void because it would impair its obligation in several particulars, we said: "Any law which changes the intention and legal effect of the original parties, giving to one a greater and to the other a less interest or benefit in the contract, impairs its obligation. The extent of the change is immaterial. Any deviation from its terms by hastening or postponing the time of performance or postponing

the time of performance which it prescribes, or imposing conditions not included in the contract, or dispensing with the performance of those that are included, however small and unimportant they may appear to be in their effect, impairs the obligation of a contract. . . . The legislature may regulate the remedy and the method of procedure under a past as well as a future contract, but it cannot impose new restrictions upon the enforcement of a past contract, so as materially to lessen its value and benefit to either party." *O'Connor* v. *Hartford Accident & Indemnity Co.*, 97 Conn. 9, 15, 115 Atl. 484. In a case where larger compensation was awarded under an Act passed subsequent to the accident than was provided by the law in force when the accident occurred, the court held: "If such be the intention of the Act it cannot under the plain provisions of both the Federal and State Constitutions be given that effect so far as concerns rights and obligations which accrued before its passage. . . . Upon the happening of an industrial accident the right to receive compensation becomes vested, and the obligation to pay it fixed. To change such vested rights and fixed obligations by statute would clearly be to impair the obligation of contracts." *Gauthier's Case*, 120 Me. 73, 76, 113 Atl. 28. Under the accepted rule of this jursidiction retrospective laws which impair the obligation of contracts, or substantial vested rights, are in conflict with the Federal and State Constitutions.

In § 1 of Chapter 5 of the validating acts it is provided that all bills or acts heretofore passed by the senate and house and approved by the Governor shall be presumed to have been presented to him for such approval under § 12 of Article Fourth of the Constitution within three days before the date of the Governor's approval. In § 2 it is provided that pre-

sentation of bills or acts to the Governor heretofore made either in their original or engrossed form, or in both such forms, as to any irregularity as to time, place or manner of presentation, are validated. Section 1 attempts to make evidence by creating a presumption that the presentation of bills to the Governor has been made in accordance with the constitutional provision. Manifestly this cannot be done. Whatever power the legislature may have as to future procedure it cannot change the procedure affecting past transactions in such way as to prevent judicial control of that situation.

Section 2 attempts to validate the presentation of bills or acts to the Governor however far the time of presentation may depart from the constitutional requirement. These sections are encroachments upon the judicial authority, which is inherent in it, and which it cannot permit to be interfered with by legislative action since its tolerance would weaken the judicial function and as a consequence weaken the administration of justice. These sections attempt to do by indirection what may not be permitted by direct action. Either method is an invasion upon those Federal and State constitutional provisions to which we have referred.

In *Virginia Coupon Cases* (*Gorman* v. *Sinking Fund Comrs.*) 25 Fed. 647, 650, the Circuit Court states the governing rule for that case as well as for this in these words: "So far as it [the Act in question] undertook, in declaring the true intent and meaning of a previous statute, to give that meaning a retrospective operation, it was nugatory. It is not competent for the legislative department of government to declare the meaning of previous statutes for such a purpose. That is the province of the courts. If the new statute declares the law to mean what the courts declare it to mean,

then it is useless. If it undertake to give the law a meaning different from that given by the courts, then it is void. To declare what the law is or has been is a judicial function. To declare what it shall be, is legislative."

The jurisdiction to determine whether a statute is in conflict with the State Constitution is in the judiciary. The General Assembly may not usurp this power nor exercise the judicial power save in certain classes of excepted cases (Cooley, Constitutional Limitations, 8th Ed., Vol. 1, p. 176), to which the case before us does not belong. *Atwood* v. *Buckingham,* 78 Conn. 423, 428, 62 Atl. 616.

The line between the legislative and judicial function is often hard to definitely ascertain. The present instance of legislative encroachment is so marked as to make unnecessary a more complete discussion of this broad and interesting subject.

We omit discussion of other points argued upon the appeal until the case requires their decision, which this case does not.

The Superior Court is advised to sustain the amended reasons of appeal thirteen to sixteen inclusive and to allow the claim for compensation in the amount prescribed by Chapter 142 of the Public Acts of 1919.

In this opinion the other judges concurred.