53 N.J. Super. 557 (1959)
148 A.2d 68
ROSANNE TERRACCIONA, BY HER GUARDIAN AD LITEM, PATSY TERRACCIONA, AND PATSY TERRACCIONA AND SUE TERRACCIONA, PLAINTIFFS,
v.
HAROLD MAGEE, THE YOUNG MEN'S CHRISTIAN ASSOCIATION OF LONG BRANCH, NEW JERSEY, A BODY CORPORATE, AND NICK COSTELLO, DEFENDANTS.
Superior Court of New Jersey, Monmouth County.
Decided January 19, 1959.
*561 Messrs. Parsons, Labrecque, Canzona and Combs (Mr. Theodore J. Labrecque, Jr., appearing), attorneys for plaintiffs.
Mr. Solomon Lautman, attorney for defendants.
MARIANO, J.S.C.
This is a motion on behalf of the infant plaintiff, Rosanne Terracciona, to amend the pretrial order by deleting therefrom paragraph 3(a) and paragraph 7 which concern the defense of charitable immunity.
On March 5, 1954 Rosanne Terracciona, an infant, age 14 years, was injured while engaged in the activity of roller skating as a result of the alleged negligence of the defendant Young Men's Christian Association of Long Branch, New Jersey, its agents, servants or employees. On March 1, 1956 an action was instituted against the defendant and its agent, servants or employee, defendant, Harold Magee. On March 29, 1956 an answer was filed which failed to set up as a separate affirmative defense the charitable immunity doctrine. On January 2, 1957 a pretrial order was entered which did not contain as a legal issue the defense of charitable immunity. Thereafter, on November 6, 1957, a complaint, arising out of the same incident, was filed and served and named one Costello, an employee of the defendant Young Men's Christian Association, as a defendant. On December 11, 1957 defendant Young Men's Christian Association obtained an order amending the pretrial order of January 2, 1957 permitting it to set forth the affirmative defense of exemption from liability by virtue of the charitable immunity doctrine.
The action originally commenced against the Young Men's Christian Association and Magee was consolidated with the action against the defendant Costello under date of March 28, *562 1958. Thereafter plaintiffs sought and obtained leave to amend the complaint so as to join Magee, Costello and the Young Men's Christian Association as defendants. Answer to the amended complaint omitted any reference as a separate defense the doctrine of charitable immunity.
The matter at bar came on for pretrial again under date of November 12, 1958, and in paragraph 3 of the pretrial order appears the following:
"Defendant, Y.M.C.A., alleges that it was and is a charitable organization and is immune from liability."
The pretrial order also contained as one of the legal issues, in paragraph 7 thereof, the following:
"charitable immunity."
Under date of April 28, 1958 our Supreme Court, in actions captioned Dalton v. St. Luke's Catholic Church, 27 N.J. 22 (1958); Collopy v. Newark Eye & Ear Infirmary, 27 N.J. 29 (1958), and Benton v. Y.M.C.A., 27 N.J. 67 (1958), overturned as part of the decisional law of our State the doctrine of charitable immunity.
Under date of July 22, 1958, subsequent to the above decisions, the Legislature of New Jersey adopted chapter 131 of the Laws of 1958, N.J.S.A. 16:1-48 to 16:1-53, inclusive, which reinstated with certain limitations the theory of charitable immunity.
It is seen from the chronology of events leading to the motion before the court that at the time the infant plaintiff received her injuries, the decisional law of our State was to the effect that non-pecuniary corporations were immune from liability to persons injured where the injured party was a beneficiary of the work of the charitable institution. D'Amato v. Orange Memorial Hospital, 101 N.J.L. 61 (E. & A. 1925).
The general rule in civil cases is that change of established law by judicial decision is retrospective. Fox v. Snow, 6 N.J. 12, 14 (1950); Arrow Builders Supply Corp. v. *563 Hudson Terrace Apts., Inc., 16 N.J. 47 (1954); Johnson v. State, 18 N.J. 422, 428, 429 (1955). It makes the law at the time of prior decisions as it is declared in the last decision, as to all transactions that can be reached by it.
The decisions which overturned the doctrine of charitable immunity specifically stated that the overruling of the immunity theory was retrospective in nature. In Dalton v. St. Luke's Catholic Church, supra, 27 N.J. at page 25, Mr. Justice Jacobs, in speaking on the retrospective effect of the decision, said:
"The defendant contends that the overturning of the immunity should have prospective rather than retrospective application. In Arrow Builders Supply Corp. v. Hudson Terrace Apts., 16 N.J. 47 (1954), we recently noted that our courts have consistently adhered to the prevailing doctrine that the overruling of a judicial decision is retrospective in nature. (Fox v. Snow, 6 N.J. 12, 14 (1950); Ross v. Board of Chosen Freeholders of Hudson County, 90 N.J.L. 522, 527 (E. & A. 1917); we recognized that much had been written in the law reviews on the issue of whether the overturning of a prior decision upon which the litigant had actually guided himself should not justly be confined to future transactions (Note, "Prospective Operation of Decisions Holding Statutes Unconstitutional or Overruling Prior Decisions," 60 Harv. L. Rev. 437 (1947), but we declined to deal with the conflicting social and individual considerations which had been advanced since we were satisfied that there had been no justifiable reliance on the overruled decision. Here also we are satisfied that the circumstances do not in any event call for a departure from the prevailing rule that the overturning of a judicial decision is retrospective in nature."
The above rule is not without exceptions, for it has been generally held that such retroactive operation and effect of a decision of a court of last resort in civil cases does not reach transactions where contract or property rights have vested or where extreme hardship would result. Arrow Builders Supply Corp. v. Hudson Terrace Apts., Inc., supra; 14 Am. Jur., page 346.
Defendant contends that the application of the general rule would work an extreme hardship upon it because it relied upon prior decisions and lacked any evidence or indication of the impending overturning of the immunity doctrine. In treating this point the court will take judicial *564 notice of the fact that the Young Men's Christian Association is a worthy, and at least national in scope, organization. In Dalton v. St. Luke's Catholic Church, supra, 27 N.J. at page 26, our Supreme Court pointed out that the first indication that the doctrine was being attacked in our State occurred in 1949, five years before the infant plaintiff in the instant matter was injured. It said:
"The validity of the immunity has been questioned in our State for a considerable period of time. In Woods v. Overlook Hospital Ass'n, 6 N.J. Super. 47 (App. Div. 1949), the Appellate Division pointed out that it had been vigorously attacked in academic circles and in recent decisions and quoted from the well-known opinion in President and Directors of Georgetown College v. Hughes, 76 U.S. App. D.C. 123, 130 F.2d 810 (D.C. Cir. 1942), where Justice Rutledge had dealt exhaustively with the subject and had concluded that the considerations of public policy against the immunity far outweighed those in support. In Rafferzeder v. Raleigh, etc., Memorial Hospital, 33 N.J. Super. 19 (App. Div. 1954), certiorari granted 17 N.J. 557 (1955), the Appellate Division again strongly questioned the immunity although it was still obliged to apply it; after this court granted certification the matter was settled and the proceeding was dismissed. In his discussion of Rafferzeder, Professor Cowan predicted that the immunity was about to be discarded by this court. See Cowan, "Torts," 10 Rutgers L. Rev. 115, 119 (1955). In Lindroth v. Christ Hospital, 21 N.J. 588 (1956), Justice Brennan's language gave further evidence of the impending overturning of the immunity and in Lokar v. Church of the Sacred Heart, 24 N.J. 549 (1957) three of the six participating members of this court affirmatively voiced their opposition to it. It thus appears that for some time past there has been no reasonable basis for reliance of the unimpaired continuance of the immunity; indeed, reliance has very little place anywhere in the field of torts and the defendant has not suggested that its standard of care or the scope of its insurance coverage was actually influenced by the immunity. All of the courts throughout the country which have heretofore rejected the immunity have done so retrospectively and we see no just reason for doing otherwise. See Hart & Sacks, The Legal Process: Basic Problems in the Making and Application of Law 654 et seq. (Cambridge Ten. Ed. 1957)."
Prior to the Georgetown College case, supra, decided in 1942, few state courts imposed total liability upon charitable non-pecuniary corporations. In the decade that followed a flood of other jurisdictions soon likewise abolished immunity: North Dakota (1946); Iowa (1950); Vermont (1950); *565 Arizona (1951); California (1951); Delaware (1951); Mississippi (1951); Colorado (1952). For the list of pertinent cases see Note 60, 32 Temple L.Q. 96 (Fall 1958). At the present time 20 states and the new state of Alaska advocate a total liability policy. In the past the Young Men's Christian Association organization in various states has been involved in litigation where the immunity doctrine was questioned. See Carpenter v. Y.M.C.A., 324 Mass. 365, 86 N.E.2d 634 (Sup. Jud. Ct. 1949); Caughman v. Columbia Y.M.C.A., 212 S.C. 337, 47 S.E.2d 788 (1948).
It thus appears that for some time past, and beyond 1954, there existed no reasonable basis for reliance upon the continuation of the immunity doctrine. The defendant Young Men's Christian Association cannot successfully contend that it lacked any evidence or indication of the impending overturning of the immunity doctrine. In any event, I am satisfied that there are no circumstances that call for a departure from the prevailing rule that the overturning of a judicial decision is retrospective in nature. It is clear, therefore, that the infant plaintiff, at the time the injury was sustained and at the time suit was instituted for the alleged tortious injury, had a valid vested right of action against defendant Young Men's Christian Association free of any defense of immunity from liability by virtue of its charitable nature.
Subsequent to April 28, 1958 the State Legislature, by the adoption of N.J.S.A. 16:1-48 et seq., L. 1958, c. 131, reinstated with certain limitations the doctrine of charitable immunity.
N.J.S.A. 16:1-48 provides:
"No nonprofit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any *566 person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association; but nothing herein contained shall be deemed to exempt the said agent or servant individually from their liability for any such negligence." L. 1958, c. 131, § 1. (Italics mine.)
The title of the act is as follows:
"An Act concerning corporations, societies and associations organized exclusively for religious, charitable or hospital purposes; providing that they shall not be liable to respond in damages, in certain cases; and providing for the application and operation of the act and for its retroactive operation to January 1, 1956." (Italics mine.)
N.J.S.A. 16:1-53 gives as the effective date of the act July 22, 1958, and provided for its expiration on June 30, 1959.
Generally, a statute which changes the settled law is prospective only. Fox v. Snow, supra. Statutes which relate to substantive rights are construed to operate only prospectively in the absence of a clear expression of opposite intent. Neel v. Ball, 6 N.J. 546 (1951); Kopezynski v. County of Camden, 2 N.J. 419 (1949). See also Connell v. Carpenter, 9 N.J. Super. 236, at page 241 (App. Div. 1950). Courts will not give retrospective operation to a statute interfering with antecedent rights in absence of unequivocal expression of Legislature's intent that statute shall have such effect. Pennsylvania Greyhound Lines v. Rosenthal, 14 N.J. 372 (1954).
In Connell v. Carpenter, supra, the court said:
"A cardinal rule in the interpretation of statutes is that words in a statute ought not to have a retrospective operation unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intent of the Legislature cannot otherwise be satisfied. Kopczynski v. County of Camden, 2 N.J. 419, 424; 2 Sutherland, Statutory Construction (1943), § 2212. In accordance with the rule applicable to original acts, it is presumed that provisions, added by amendment, affecting substantive rights are intended to operate prospectively. 1 Sutherland, Statutory Construction (1943) § 1936. The 1950 amendment added members *567 who served in World War II to those who `shall be entitled to be admitted to examination for promotion'; but this is clearly intended to operate prospectively."
It is highly significant that the body of the statute contains no provision with respect to retroactive application.
It is well settled that the title of an act cannot support a construction beyond the plain meaning of the body of the statute itself.
In Swede v. City of Clifton, 39 N.J. Super. 366 (App. Div. 1956), affirmed 22 N.J. 303 (1956), Judge Goldmann, speaking for the Appellate Division and in response to the contentions of the plaintiffs that their right to the appointment to the position of police sergeant could be sustained by drawing from the title of the act concerning civil service certifications, 39 N.J. Super. at page 377 said:
"Although the title of an act will be recognized as casting some light upon the meaning of legislation, Pancoast v. Director General of Railroads, 95 N.J.L. 428, 429, 430-431 (E. & A. 1921), it is not to be used to expand or enlarge upon the plain meaning of the language employed. 1 Sutherland, Statutory Construction (3d ed. 1943) § 1720, p. 314. The case of Addotta v. Blunt, 114 N.J.L. 85 (Sup. Ct. 1934), cited by plaintiffs, held only that the title of an act set a limitation upon the enacting clauses and that `any construction of the latter that would give them a scope beyond the object expressed in the title is for this reason to be rejected.' (114 N.J.L., at pages 87-88). We are referred to no case which would support an attempt to construe a statute beyond its plain meaning because of the fact that the phrasing of its title was perhaps broader than the content of the statute itself."
There must be added to this concept of statutory construction the evident judicial disfavor of giving retrospective application to a statute where the words do not clearly, strongly and imperatively demand it. Nichols v. Board of Education, 9 N.J. 241 (1952). In no part of the act itself does there appear any provision that it shall have retrospective application, yet the body of the act, that is, N.J.S.A. 16:1-53, supra, or section 6 of L. 1958, c. 131, states that the effective date shall be July 22, 1958 and the act shall expire on June 30, 1959.
*568 Apart from the broadness of the title to the amended legislation set forth aforesaid, it is the general rule that statutes ought not be given retrospective operation unless the words in the statutes and the intent and meaning from the words "in the statute" can be given no other meaning.
In Kopczynski v. County of Camden, supra, which involved the construction of a statute dealing with the compensation of a court appointed interpreter, Judge Burling, 2 N.J. at page 424, said:
"A cardinal rule in the interpretation of statutes is that words in a statute ought not to have a retrospective operation unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intent of the Legislature cannot otherwise be satisfied. Burdett v. Municipal Employees, etc., Newark, 129 N.J.L. 70, 72 (E. & A. 1942); Harrington Co. v. Chopke, 110 N.J. Eq. 574, 579 (E. & A. 1932); 2 Sutherland, Statutory Construction (1943), sec. 2212, pp. 134, 135. Applying this test to the amendment in question, no such intention of retroactivity appears. To the contrary, the statute bespeaks futurity. The statutory language is that such salary `shall not become effective' until its approval by resolution of the board of freeholders."
As an aid in the interpretation of statutes it is a cardinal rule that the word "shall" connotes prospective operation and cannot embrace events which have already occurred. Note the number of times "shall" is used in N.J.S.A. 16:1-48, supra. See Connell v. Carpenter, supra; also Cassan v. Fern, 33 N.J. Super. 96 (Law Div. 1954).
Applying the foregoing rules of statutory interpretation, it must be concluded that the statute in question must be construed as being prospective in nature. No intention of retroactivity appears. To the contrary, the statute bespeaks futurity.
Any other interpretation of the statute in question would render it unconstitutional, contrary to the strong presumption in favor of conformity with organic law. A legislative act is not to be declared void unless its repugnancy to constitutionality is clear beyond reasonable doubt. Gangemi v. Berry, 25 N.J. 1 (1957).
*569 To interpret the statute in question as being retrospective in operation would destroy a vested right of property which inured to the infant plaintiff on the day she sustained her injuries. It is well settled that an action arising out of tortious conduct is a vested property right which is protected against impairment by the action of a state, by virtue of the due process clause of the Fourteenth Amendment of the United States Constitution.
In Siller v. Siller, 112 Conn. 145, 151 A. 524 (Sup. Ct. Err. 1930), the plaintiff brought an action for personal injuries against the operator and owner of a vehicle in which she was a passenger. At the time the action was commenced the negligence law of the State of Connecticut was governed by the common law. Subsequent to the institution of the action, Connecticut adopted the so-called "Guest Act." The trial court, in submitting the issues to the jury, instructed the jury that plaintiff's cause of action was governed by the provisions of the Guest Act. From a verdict in favor of the defendant the plaintiff prosecuted an appeal, and the Supreme Court of Errors, in reversing the action of the trial court, at page 525 of 151 A., said:
"One of the defendants' chief contentions is that there is no impairment in this case of a vested right, since none can arise in an action for damages for personal injuries growing out of a tort until judgment. The point was not considered in the Preveslin case [Preveslin v. Derby & Ansonia Developing Co., 112 Conn. 129, 151 A. 518, 70 A.L.R. 1426] and merits present treatment.
The authorities appear to be divided on this proposition. On principle we see no difference between the action against the owner of an automobile for negligently damaging his car and the action for injury to his person caused at the same time. Identically the same principles of our common law and the same procedure determine the one action as the other. `Property,' it is said in the American Law Institute, Draft 1, page 11, `consists essentially of legal relations,' which exist only between persons. The legal relation between a plaintiff and a defendant is identical in each action of negligence whether the injury to property or person, and each action, if pressed to a successful conclusion, will result in a pecuniary award for the damage done by the invasion of either of the interests of the plaintiff.
In Dunlap v. Toledo, A.A. & G.T. Ry. Co., 50 Mich. 470, 474, 15 N.W. 555, 556, Judge Cooley writes:
*570 `There is no doubt that a right in action, where it comes into existence under common-law principles, and is not given by statute as a mere penalty or without equitable basis, is as much property as any tangible possession, and as much within the rules of constitutional protection.' In support of this proposition, Judge Cooley cites Hubbard v. Brainard, 35 Conn. 563, which, at page 576, says: `And in the third place, if, as we assume, the money so taken by the defendant illegally from the plaintiff, was the money of the plaintiff in the hands of the defendant, which by the principles of the common law he had a vested right to recover, it was not competent for Congress by subsequent legislation to exclude the plaintiff from his right to apply to the Superior Court of this state (of which the parties were both citizens), for its recovery, or limit the time within which he should bring such action.'
In Womach v. City of St. Joseph, 201 Mo. 467, at page 482, 100 S.W. 443, 446, 10 L.R.A., N.S., 140, the court defines a right to damages for a tort in these words: `Now, "property," in one sense, may mean a chose in action. A "chose in action," in one sense, may be any right to damages, whether arising from the commission of a tort, the omission of a duty, or the breach of a contract.' In his Constitutional Limitations (8th Ed.) vol. 2, p. 749, Judge Cooley states that a right, to be considered a vested right, `must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exemption from a demand made by another.'
Section 6177 of our General Statutes provides that the action for personal injury survives to the executor or administrator.
To hold that a right of action for a personal injury was not a property interest in a jurisdiction, where over one third of the actions in our highest trial court in our most thickly settled counties are personal injury actions, would judicially deny one of the accepted facts in modern social conditions. We think the right of action of this plaintiff was a property interest whose invasion by the Legislature would impair the plaintiff's vested interest."
In Pickering v. Peskind, 43 Ohio App. 401, 183 N.E. 301 (Ct. App. 1930), the court, at page 303 of 183 N.E., said:
"The plaintiff's cause of action, even though sounding in tort, must be regarded as a right of property. On January 7, 1923, when the plaintiff, according to the finding of the jury, became 18 years of age, she had a right of action for tort against the defendant. This right is a right of property which could not be taken away from her by the amendment effective July 18, 1923.
A right of action for tort is a right of property protected by the Constitution. Wade on Retroactive Laws, § 172."
In Pennsylvania Greyhound Lines, Inc., v. Rosenthal, supra, which was an action brought under the Joint Tort-feasors *571 Contribution Law of 1952, N.J.S. 2A:53A-1 et seq., N.J.S.A., in which the plaintiff endeavored to have the statute applied to an action commenced and determined prior to the adoption of said law, the court, 14 N.J. at page 384, said:
"The Federal Constitution specifically denounces retrospective laws impairing the obligation of contracts and law ex post facto in nature, and now, by force of the due process clause of the Fourteenth Amendment, secures vested rights of property and otherwise against the operation of retrospective laws."
In City of Newark v. Padula, 24 N.J. Super. 483 (Ch. Div. 1953), affirmed 26 N.J. Super. 251 (App. Div. 1953), Judge Stein, in determining an action involving the planning and subdivision requirements of R.S. 40:55-15 et seq., and in speaking on the plaintiff's contention that an amendment to the aforesaid statute should be construed retroactively, 24 N.J. Super. at page 490 said:
"The plaintiff's interpretation of the June 1951 amendment makes that enactment constitutionally offensive in another sense. To permit that amendment to destroy a vested estate in property would constitute a taking of property in violation of the due process clauses of the State and Federal Constitutions. See case of Pennsylvania-Reading Seashore Lines v. Bd. of Public Utility Com'rs, 5 N.J. 114 (1950). Headnote No. 5 to the opinion of Chief Justice Vanderbilt recognizes and treats as alike in respect of due process our State and Federal Constitutions, referring to Art. 1, pars. 1, 20; U.S.C.A. Const., Art. 1, § VIII, cl. 3; Amend. 14."
In Shack v. Weissbard, 130 N.J.L. 472, at page 475 (Sup. Ct. 1943), which involved a construction of an amendment to R.S. 46:8-10, the court said:
"Further, in our opinion, the Act is clearly prospective. It applies to holdover tenancies that may arise after the effective date of the statute and not those that had theretofore been established. This construction sustains the legislation as valid  the other would bring the statute into collision with vested right. It is our duty to uphold an enactment of the legislature if reasonably it can be done. The instant case presents no difficulty in this respect. That the statute should not be given retrospective effect when property rights *572 are adversely affected is well settled in this state. Cf. Baldwin v. Flagg, 43 N.J.L. 495; Morris v. Carter, 46 N.J.L. 260; Vanderbilt v. Brunton Piano Co., 111 N.J.L. 596, 599."
The general rule is also stated in 11 Am. Jur. 1206, sec. 377:
"A vested right of action is property in the same sense in which tangible things are property and is equally protected against arbitrary interference, and whether it springs from contract or from the principles of the common law, the legislature may not take it away. To permit the legislature to destroy vested rights of action is in violation of the due process clause, and since the enactment of the Fourteenth Amendment, such legislation is invalid thereunder, although prior to the passage of this amendment there was no Federal constitutional limitation on the state legislatures or Congress preventing the destruction of vested rights of action."
It should be stated at this point that the act in question provides for a rule of substantive law and is not one which involves a mere change in procedure which is not offensive to constitutional law.
Counsel for defendant Young Men's Christian Association argues for retroactive operation of Dalton v. St. Luke's Catholic Church; Collopy v. Newark Eye & Ear Infirmary and Benton v. Y.M.C.A., supra, because in Botta v. Brunner, 26 N.J. 82 (1958), our Supreme Court expressly overruled all previous cases inconsistent therewith (Botta). It is true that the Supreme Court stated as follows:
"In order that the rule announced in the present case [Botta] may be invested with its full and intended scope, those decisions are expressly overruled." (26 N.J. at page 104)
In expressly overruling what the court referred to as "those decisions," it referred to those cases which held that it was not improper for counsel to advise the jury as to the amount of the ad damnum clause in the complaint, and also those cases which sanctioned a statement to the jury in summation of counsel's opinion as to the amount which should be awarded to the plaintiff, and those which approved reference *573 to suggested amount as reasonable compensation; and to declare it improper to send a complaint to the jury as a matter of course since it contained the damages demanded. It is obvious that the Supreme Court was dealing with a matter of procedure, which may be changed, altered or abolished as long as substantial remedy remains and substantive rights of individuals are not violated.
In conclusion, this court finds no compelling reason to depart from the prevailing rule that overturning of a judicial decision is retrospective in nature and that statutes which relate to substantive rights are to operate prospectively only in the absence of a clear expression of opposite intent. To do otherwise would divest the infant plaintiff of her vested right of action and to pale the statute in question with the stigma of unconstitutionality. The defense of charitable immunity as set forth in the pretrial order must be stricken and denied to the defendant, Young Men's Christian Association.