Judge Ewing
delivered the Opinion of the Court.
Dorris and Wife filed their bill against Whitesides and Powell, to redeem several slaves alleged to have been mortgaged by Dorris to Whitesides, and by him after-wards transferred to Powell, by whom they were removed from the State into some foreign parts, and sold to persons unknown.
They charge that the slaves were bequeathed to the wife of Dorris, during her natural life only, by her deceased brother, with remainder over to her children; *102 and they make them defendants, and pray restitution of the slaves, or their value and hire, unconditionally, to her, if equitable — if not, that an account be taken of the mortgage-money due, with interest, and after deducting the amount from the value and hire, that the balance be decreed to be laid out in other slaves for the benefit of Mrs. Dorris for life, and afterwards for the use of her children, and ask the children to consent to said recovery and arrangement.
The several an swers.
The facts of the case.
The adults answer by their attorney, and the infants by their guardian ad litem, consenting to, and praying for, a recovery of their value, if the slaves cannot be had, to be invested as proposed by the bill, and consenting to a surrender of their interest to the slaves and their increase, upon such recovery.
Whitesides answered, contending that he acquired the title by absolute purchase, and not by mortgage, and transferred his claim, such as it was, to Powell, who run off and sold the slaves. He makes his answer a cross-bill against Powell, and prays for relief against him, in case he is made responsible.
Powell answered the original and cross-bills, exhibiting the two instruments given by Dorris to Whitesides, and the latter’s assignment, on each, to him, and contends that he had no other notice of the transfers being mortgages, than that exhibited on the face of the writings, and admits that he removed the slaves out of the State' and sold them.
It is manifest, from the proof, that the slaves in contest were bequeathed to Mrs. Dorris for life only, with remainder over to her children; that Dorris had possession of them, and, in 1828, mortgaged and delivered one of them (Tenor) into the possession of Whitesides, to secure the payment of one hundred and five dollars, borrowed from him; that, whilst said slave was in White-sides’ possession, she had a child; that, in 1829, Dorris sold to Whitesides the other two slaves, William and Delilah, for his own life, for three hundred dollars, to be paid in one, two and three years, and hired the slaves from him till the following Christmas, for thirty five dollars; that, in a short time thereafter — say about a month *103 or two — the parties came to another arrangement, by which it was agreed that Whitesides should advance him two hundred dollars only, and he was to have the immediate possession of said two slaves, and Dorris was to have the right to redeem them by refunding the money the next Christmas, or at any time thereafter. The writing evidencing the first contract seems not to have been given up or cancelled.
Decree of the cir cuit court.
Whitesides retained possession of all the slaves until the 27th of January, 1830, when, on an arrangement between him and Powell, both instruments of writing were transferred to Powell — the first for one hundred and five dollars, the latter for three hundred dollars, and the slaveá delivered to him: he having, prior to that time, procured an execution, upon a judgment of about seven hundred dollars which he held on Dorris, to be levied on his interest in them.
After his purchase from Whitesides, he caused his execution to be returned, and immediately carried the slaves out of the State, to some foreign, unknown parts, and made sale of them.
The Circuit Court decreed against Whitesides the full fee simple value of William and Delilah; and against Whitesides and Powell jointly, the fee simple value of Tenor and her child; and, it appearing that the hire of the slaves, which were estimated from the time White-sides obtained possession up to the decree, at two hundred and forty four dollars more than the whole sum advanced by Whitesides and the interest thereon, as well as the charge for raising the young slave — the said excess of hire was first off set against Whitesides’ judgment on his note for thirty five dollars, and the balance was off set by so much of the judgment of Powell. But Whitesides was decreed to refund to Powell the amount of his judgment which was off set, and Powell was decreed to refund to Whitesides the value of Tenor and child, in case the amount should be made out of him.— And thewalue of the slaves was vested in a trustee, to 'be loaned out, and the interest from year to year to be applied to the benefit and support of Mrs. Dorris during her Yife, free from the control of her husband, and at her *104 death to be divided among her children. Whitesides has brought the case to this Court.
Devise of three slaves to a married woman for life, remainder to her children. Her husband mortgaged one, and sold his life interest in the others to the mortgagee, who sold all three to another,by whom they were carried off, irretrievably. The husband and wife filed their bill to regain the slaves, if to be had, if not, to recover their value —to be invested in other slaves for the use of the ' wife for life, then for her children; and to recover hire. The children, made defts., answered, concurring in the objects of the bill, and consenting— those objects attained — to a divestiture of their title. It is contended that the purchaser of the slaves can be made liable, in this suit, only to the extent of the wife’s interest; that the devisees in remainder can not unite with the tenant for life to recover the slaves, at law, or in chancery; and that there can be no decree for the value of th sir interest: but held, that the decree may be for the entire value, & for the hire, to be distributed according to the titles of the parties respectively. And the decreeagainst those who, having received & re moved theslaves, are accountable for their value, will confirm their title, and divest that of the devi-sees , and bar them of any future claim to the slaves themselves. If there is a decree against the mortgagee(sMp-) for the fall value of the slaves, he will be entitled to a decree ns. his vendee , for the value of the remainder, as an interest for his life was all he sold ; or there may be a decree against the mortgagee, for the val ue of the life estate, and against his vendee, for the value of the remainder.
*104 It is first contended that Whitesides cannot be made responsible for the full fee simple value of the slaves, but only for the value of the life estate of Mrs. Dorris. That those in remainder could not sue at law, and therefore could not unite in a suit in chancery for the injury complained of,
The argument urged on this point is exceedingly plausible, and not entirely free from doubt. But upon due consideration, we are of opinion that it is too attenuated and technical for a court of equity. Even at law, an action on the case will lie in favor of him in reversion or remainder, for an injury to personal or real estate, affecting his interest, as for waste or the destruction of the thing. Chitty,s General Practice, 101-2, 138-9. 1 Chitty’s Pleadings, 48-9, 133-4. And in the former book (page 102) it is said, that an action of trespass or trover will only lie for injuries to personal goods, when the owner has possession in fact, or at least the right to immediate possession; but he must proceed by action on the case for the injury, when it affects his reversion-ary interest, as by an absolute sale± and permanent injury. 4 T. R. 489; 7 T. R. 9; 15 East, 607. The absolute sale and removal of the slaves out of the jurisdiction and power of our laws, certainly affects the security of the title of the reversioner, and may endanger the entire loss, especially when removed to distant and unknown parts. If it be an injury affecting the value of his interest — as there is no injury without a remedy — it would follow that an action at law would lie. But waiving this consideration, we cannot doubt that relief may be afforded in equity, to the full value of the slaves, under the circumstances of this case. Equity delights to do full, final and complete justice at once, and, to that end, all persons interested may be brought before the Court. The children- of Mrs. Dorris are certainly interested ip the property in contest, and deeply . interested, as the means of affording security to their title, to have th§> slaves restored to the possession of the tenant for life, from whom they were obtained, in their neighborhood, • *105 and within the jurisdiction of the Courts of their State. If they cannot be restored, they have a right to be indemnified by an equivalent in value.
If the absolute estate had been in Dorris, and he had mortgaged them, upon application to a court of equity to redeem, and an order and decree for redemption, the mortgagee would have been bound to restore the slaves, or account for their full value in fee, and not for their value only for life or a term of years. When the whole absolute estate is in Dorris and his children, all of whom are parties, and praying for a restitution of the slaves, or their value upon the failure or refusal to restore them, especially when it turns out that they have been run out of the country, and no attempt or proffer made to restore them, or any reasonable likelihood that they can ever be restored, we can perceive no good reason why a decree for their full value may not be taken, to be divided out according to the several interests of the parties concerned. Whitesides, to whom, upon the mortgage, the custody of the slaves were committed, has no right to complain, as he, by his own act, in violation of his contract, has put it out of his power to place the slaves in statu quo. Nor has Powell, who has run the slaves off, and no doubt pocketed their full value, a right to complain. And the children of Mrs. Dorris, who have, by their acts, been deprived of the means of taking the immediate possession of the slaves and their increase, upon the termination of the particular estate, have been injured, and are not bound to wait until, by the lapse of time, they may lose the evidence to establish their right, or until Whitesides and Powell may fail, or remove themselves and property out of the State. Besides, Dorris or his representatives might be made liable to his children after the termination of his life estate, and if he could not recover the full value from his bailee, he might be left without indemnity for his liability over.
It is said that the slaves may be restored before the termination of the particular estate. No offer of the kind was made, or assurance that it would be done.— Besides, the time to restore them was when the tender to *106 redeem was made, or at least on or before the decree for redemption was pronounced.
The mortgagee {supra) is liable for the value and hire of all the slaves; and his assignee of the mortgage is liable for the hire of that one; but for the other two, which were sold to him, without notice that his vendor’s contract of purchase had been changed into a mortgage, he is not liable for hire.
*106 It is said, also, that the slaves may die before the right to possession accrues to those in remainder; they may, also, increase in number and in value, and which is most likely, as there are two young females among them.
■ Again: it is urged that a decree for a restitution of their value will not divest their title, or confer a good right on Whitesides or those claiming under him.
We think otherwise. If, at their instance and upon their prayer, their value is recovered, they would be af-terwards estopped to sue for or recover the slaves themselves. The title passes from them by such a decree, as fully as it passes by a recovery in trespass or trover.
But there is certainly error in the decree of the Circuit Court, in making Whitesides account for the full value of the slaves William and Delilah, and in not making Powell account over to him for any thing on their account. Though Powell may not have had any notice at the time of his purchase, that those slaves were only mortgaged to Whitesides, he had notice that he held only an estate for the life of Dorris in them. The instrument of writing executed for them, by Dorris to Whitesides, passed only an estate for his (Dorris’) life, and purported to pass no ’ more. That instrument was assigned by Whitesides to Powell, and it is evident that he sold to Powell only such interest in them as the instrument executed to him by Dorris purported to convey. Powell had, therefore, no pretext, by virtue of the right derived from Whitesides, to sell a greater interest in the slaves than for the life of Dorris, Powell 'should, therefore, have been made responsible to the complainants and their children, or over to Whitesides, in case he paid the whole value, for the value of the estate in remainder, after the death of Dorris, in those two slaves.
The Court has also erred in decreeing Whitesides to refund to Powell the whole excess of the hire of all the slaves which had been off set against Powell’s judgment.
In relation to William and Delilah, as the sale to Powell purports to be absolute for the life of Dorris, he had a *107 right to hold them and enjoy their profits, and White-sides should be alone responsible to the claimants for their hire. But as to Tenor and child, as Whitesides only assigned his mortgage to Powell, whatever claim or interest he then held in her, passed to Powell, "and no more; Powell should therefore be made to account for her hire while she was in his possession, as he enjoyed her services.
The decree for hire may be against both, so far as each is liable, and against the mortgagee alone for the residue; or against the latter for the whole, and, in his favor, against his vendee, for the amount for which the vendee is liable.
A court of equity will not aid a hus band in acquiring possession of the property or chases in action of his wife, without makingprovision out of it, for her and her children; and where property is specially set apart for the-wifo’s use,courts of eq. will treat the husband as a trustee, and require provision to be made for her. But, when a husband (without the aid of a chancellor) has acquired the pos session of slaves or other effects of the wife, they become absolutely his, and subject to his-debts: the chancellor will not then interpose to change the rights of the parties, or protect the property from the husband’s creditors. So, where a husband mortgaged the slaves in which his wife had a life estate, and they were transferred by the mortgagor, to a creditor of the husband — the hire having satisfied the mortgage, and the husband being insolvent — it is held, that his creditor may have a set-off of the value of the wife’s interest in the slaves, against a debt due from the husband.
But it should here be remarked, that, as all the slaves were put into the possession of Whitesides, and it became his duty to restore them when redeemed, the claimants may look to him for the whole value and hire; and a decree may be rendered against him for the whole, or it may be rendered against him for so much as he is made separately liable, and against him and Powell jointly for the amount that Powell is made liable by this opinion. But a decree over against Powell for the amount for which he is made responsible, should be rendered in favor of Whitesides, in case he is made to pay to the claimants the whole.
But, as the case must be remanded, it is proper that we should notice another error to the prejudice of Powell. He holds an unsatisfied judgment against Dorris, and prays that it may be off set against the amount that may be decreed against him. And it is alleged and proven that Dorris is insolvent. The Circuit Court having set apart the whole value of the slaves to the support' of Mrs. Dorris during her life, refused the set-off as to all except the excess of hire. In this the Court erred.
It is true, that if the wife have a chose in action, or a right to property not reduced to possession, and which cannot be come at by the husband, or the husband’s as-signee or creditor, without the aid of a court of equity, that court will not afford relief without making provision for the wife and children out of it. Or, when property is specially set apart for her separate use, though *108 no trustee be interposed, and is necessary for her support, that Court will treat the husband as trustee, and require provision to be made for her. Maddock’s Chy. 1st, 481-2-3-4-5, and the authorities there referred to; Kenny vs. Udall, 5 John. Chy. Rep. 474; Schuyler vs. Hoyle, same, 210; Haviland vs. Bloom & Myers, 6 John. Chy. Rep. 178, and the authorities referred to in the foregoing cases.
But as slaves or personal estate left to the wife, when reduced to possession, become the property of the husband, legally and absolutely, without the aid of a chancellor, he may sell and dispose of them as his own, and they are subject, in the same manner, and to the same extent, to the payment of his debts; a chancellor will not interpose to change the legal rights of the parties, or to wrest from him or his creditors their legal advantage. And as the slaves were in the possession of Dorris, who had a right to mortgage them, without the participation of his wife, and has done so, and as Dorris is alleged and proven to be insolvent, he ought not to be allowed to redeem, except upon the terms of paying, not only the mortgage-debt, but the judgment. Or, the judgment of Powell should have been set off against the value of Dor-ris’ interest in the slaves during the life of his wife, and the value of the remainder decreed over to her children.
It is, for the errors before noticed, the opinion of the Court, that the decree of the Circuit Court be reversed, and cause remanded, that a commissioner may be appointed to take proof, and make an estimate of the value of the slaves during the life of Mrs. Dorris, as well as the value of William and Delilah during the life of Dor-ris, and the value of the remainder in them after his and her death; and take proof and make such other estimates as will enable the Court to render a decree according to principles of equity, and not repugnant to this opinion. Whitesides is entitled to his costs in this Court.