## BONE AS ADM. VS. TORREY.

A judgment or decree in a suit against a surety, is sufficient *prima facie* evidence of the liability of the security and of the liability of the principal over to him. *Snider vs. Greathouse, ante.*

And if the proceedings and judgment or decree, in such case, do not show that the plaintiff was the security of the defendant for the debt for which such decree or judgment was rendered; the fact may be proved by the other evidence.

This court cannot take judicial notice of the laws of other States: and, in the absence of proof of the fact, will not presume that a judgment, in favor of a Bank, for a specific sum of money, was payable in depreciated Bank paper.

A security, against whom a decree was rendered, pays the amount in cash and a note with security, which are received by the creditor in full discharge of the decree: and satisfaction entered of record: this is such a payment as will entitle the surety to maintan an action against the principal.

*Appeal from the Circuit Court of Chicot County.*

Hon. JOHN C. MURRAY, Circuit Judge.

PIKE & CUMMINS, and TRAPNALL, for appellant. The Planters Bank of Mississippi was the owner of the note, and her paper, which she was bound to receive in payment, was depreciated, and the surety, if he chose to pay the debt, should have paid it in such paper, for the benefit of his principal. *Woodruff vs. Trapnall*, 10 *How. U. S. Rep.* 409; *Niagra Bank vs. Rosevelt*, 9 *Cow.* 409; *Jordan ad. vs. Adams*, 2 *Eng.* 348; *State, use Chicot County vs. Rives et al.*, 7 *Eng.* 721.

As there was no notice to Moore, either in the suit at law or in chancery, the records are evidence of the *naked facts* that such judgment and decree were rendered; but *they are no proof whatever* of the truth of the facts on which they are based, or the

justice of the demands, or their existence at all.    3 *Cow. & Hill's Notes to Phil. Ev.*, 815 *to* 820.

Mr. Justice WALKER, delivered the opinion of the Court.

On the 21st of April, 1852, George G. Torrey filed the following claim for allowance, in the Chicot Probate Court, to wit:

" *Estate of Allen Moore,*
               TO GEORGE G. TORRY,                    *Dr.*

To amount of money paid John Bacon, Alexander Symington, and Thomas Robins, assignees of William T. Irish, Volney Stamps, and James H. Murray, of a note executed by said Allen Moore, dated January the 4th, 1840, payable on the first of January, 1841, for the sum of fourteen hundred dollars, which said note was signed by said George G. Torrey, as security for said Allen Moore, and for eight per cent. interest per annum, and on a judgment previously had thereon, and a decree was rendered against said George G. Torry and others, in the vice Chancery Court, held at Natchez, State of Mississippi, on the 29th of December, 1849, for the sum of twenty-five hundred and sixteen dollars and eighty cents, together with interest, from said date, as aforesaid, and costs amounting to the sum of, for principal and interest to 29th of May, 1851, $2,802 03."

This account was sworn to in the usual form, and after several continuances had, the claim was allowed by the Probate Court of Chicot County, and ordered to be classed for payment.    Exceptions were filed to the decision of the Probate Court, and an appeal prayed and taken to the Circuit Court of said county.

At the April Term, 1853, of the Chicot Circuit Court, the case came up for hearing, upon the assignment of errors and exceptions taken to the judgment, and decision of the Probate Court; and it was upon consideration, held by the Circuit Court, that there was no error, in law, or fact, in the records and proceedings of the Probate Court; and the judgment of said court was, in all things, affirmed, with costs.    From which judgment and decision, the administrator of the estate of Moore, has appealed to this court.

The whole case turns upon the sufficiency of the proof adduced before the Probate Court to establish the claim against the estate.

In order to entitle Torry to a judgment of allowance of this claim, against the estate of Moore, it devolved upon him to prove that he was the security for Moore, and that, as such, he actually paid the sum claimed.

It is objected that the transcript of the record of the judgment from Mississippi, against Torrey, and the decree also rendered in the vice Chancery Court against him, were not sufficient evidence to establish this fact: because, Moore was not a party to either of these suits, nor does it appear, from the record in either suit, that Moore was a party to the note sued upon.

Upon examination of the record, this objection appears to be well taken in fact, and we apprehend, as this is the case, that the record would, of itself, be insufficient, to connect Moore as a party, bound in the original contract, either as principal or as security. But the claimant did not rely alone upon the record, but introduced evidence to prove, and we think did sufficiently prove, that this judgment was rendered upon a note executed by Moore, as principal, and Torrey as security. The attorney, who brought the suit, testifies to this, as well as the agent for the plaintiffs in interest in the suit. The attorney says that he brought the suit against Torrey, the security, alone; because, as is his impression, Moore was beyond the reach of process at the time. Moore himself recognized his liability as principal, and proposed to the agent to compromise the debt, by paying 70 or 75 cents on the dollar: he complained that the consideration had failed, and that it was a hard case on him. From the time when this conversation took place, it may be inferred that it was after the judgment at law, and perhaps about the time of the rendition of the decree. It is objected that there is no evidence of the assignment; and, therefore, if the payment was made, it is not shown to have been made to the creditor. The testimony of both the agent and the attorney, shows that there was a blank endorse-

ment upon the note, and this we have held to be sufficient. This seems to have been made after the commencement of the suit at law, and before judgment. But, independent of this, Moore himself fully recognized the right of the plaintiffs, by proposing to compromise and settle with them.

Torrey defended the suit at law, and judgment went against him. The reason why the money was not collected upon the judgment, seems to have been, because the charter of the Planter's Bank, in whose name the suit had been commenced, had been declared forfeited, and the assignees filed their bill to have the money collected and paid over to them. It is true that in the chancery suit he withdrew all defence, and this seems to have been done by agreement to give time to him to pay. It is not shown what defence he might have made; indeed, after the judgment at law which was defended, it is not very clear that any defence could have been interposed. It is true that Moore complained that the consideration had failed, but there is no evidence that Torrey was aware of this. But whether so or not, and although we do not question but that, if there had been collusion between the security and the creditor, whereby the judgment was taken for a larger amount than was really due, the principal might, notwithstanding the judgment, show that fact. But we have held, at the present term, in the case of *Snider vs. Greathouse*, that the record was *prima facie* evidence of the liability of the security, and of the liability of the principal over to him, to pay the amount recovered and paid by him. This, the administrator has not done; and, therefore, the decree must be held sufficient evidence of the true amount due to the creditors.

The administrator contends that this debt might have been discharged with the paper of the Planter's Bank of Natchez, which was only worth about 50 cents on the dollar; that the security should have looked to this, and have bought in the paper at the market price. We are not aware of any statute of Mississippi, that would compel the creditors to take depreciated Bank paper in discharge of that debt. We are not required to take judicial

notice of the statutes of a sister State, and there is no evidence upon the subject. The judgment was for dollars, and the payment, so far as the facts are before us, could only have been made in gold or silver, the constitutional coin.

The next question is, was the money paid, or was the debt so satisfied and discharged, as to amount to a payment?

From the proof, it appears, that one thousand dollars were paid in a draft, which was cashed, and that on the first day of December, 1851, the time of the final settlement of the decree, Torrey executed his note with security, to the creditors, for $1,782 80, payable five months after date, in full satisfaction for the decree, but the notes, up to the date of the examination of the witness, had not been paid. The decree was entered of record fully satisfied, and receipts showing the payment thereof given.

As a general rule, a surety cannot support an action against the principal debtor for money paid for the principal, if he has merely given security for payment. 2 *Stark. Ev.* 1060, *Morris vs. Berkey*, 7 *Sergt. & Rawle*, 238.

But where the creditor, by express agreement, receives a note in payment of a debt, or Bank paper, or property, there would certainly be no good reason, why such payment, so accepted, would not be a complete satisfaction of a judgment debt; because, as between the debtor and creditor, it is for the creditor to say when he has received a full compensation in satisfaction of his debt.

But as between principal and security, where the security pays or satisfies the debt of his principal, by the execution of a new security, or by the payment of property, or depreciated paper currency, there would seem to be more doubt; because, the liability of the principal to pay the security, is founded upon a payment or satisfaction of the debt by the security, and the liability of the principal is limited to the actual loss sustained by the surety by reason of his surety-ship.

If the surety pays the debt, in depreciated paper currency, or in property, the real value of the paper, or property, would be

the extent of the loss to the surety; and, consequently, of the liability of the principal over to him, unless by express contract with the creditor, he is subrogated to all the rights of the creditor. *Hickman & Pearson vs. McCurdy*, 7 *J. J. Marsh. R.* 560.

In the case before us, there was no payment, either in depreciated paper or property. The decree was paid by a draft for $1000, which was cashed, and a note with security for the balance. Was that note equivalent to cash, or is it such a satisfaction of the decree as to raise an implied promise to pay, on the part of the principal debtor?

That the decree was fully and completely discharged and satisfied, and that, too, by the security, there can be no doubt, and it is equally clear, that such discharge was as effectual for the principal, as if paid by himself. This payment of an approved note, by which the surety bound himself to pay the amount in cash, must, we think, be held *prima facie* equivalent to a payment in cash. In *Cornwall vs. Gould*, 4 *Pick. Rep.* 444, it was held that a surety, who had extinguished the debt by giving a separate promissory note for it, might maintain *indebitatus assumpsit* against his security. Such was, also, the decision of the Supreme Court of New Hampshire, in *Pearson vs. Parker*, 3 *N. H. Rep.* 366.

In *Stone vs. Porter*, 4 *Dana*, 207, it was held, that a payment in Bank notes by a surety, would entitle him to maintain an action of *indebitatus assumpsit;* and Judge ROBINSON, who delivered the opinion, remarked that if individual bills or notes had been received by the creditor, in payment of his demand, the surety might maintain *indebitatus assumpsit*. Such, too, was the decision of the Supreme Court of New York, in *Witherby vs. Mann*, 11 *John. R.* 518. And the Supreme Court of Kentucky, in *Robinson vs. Maxey*, 7 *Dana*, 105, reviewed its former decisions, and those of several of the sister States; and, in answer to the objection that the money must be, in fact, paid before assumpsit can be maintained, said: "The law will not speculate on such remote contingencies. On the contrary, it will consider the

substituted bond as equivalent to the amount of it in money, because it was so considered by the parties to it, and may be, and probably is, a full equivalent."

The presumption that the note was so received, may no doubt be repelled by evidence, showing that it was accepted by way of compromise, and was not taken, or held as equivalent to the nominal amount in money ; but, in the absence of such proof, the better opinion would seem to be, to treat the substituted note as cash. None of the objections can well arise here, that have been urged in some of the cases, that the proof must correspond with the allegation, and that proof of a note executed, will not sustain a money count, because, in this case, there were no formal pleadings, and we only look to the substance of the issue.

No valid objection can be raised to the amount of the allowance by the Probate Court. That was evidenced by the decree of the vice Chancery Court, at Natchez, and as we have held, was at least *prima facie* evidence of the amount really due upon the claim.

Let the judgment of the Circuit Court be affirmed.

Absent, Mr. Justice SCOTT.