# Board of Education for Montgomery County et al. v. Greer et al.

(Decided May 3, 1935.)

98

PREWITT & PREWITT for appellants.

JOHN J. WINN for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

On May 10, 1934, appellees filed petition in equity seeking to enjoin the Montgomery county board of education from putting into effect an order of the board entered on its records on January 20, 1934, which directed that the schools in Jeffersonville No. 3 and Salem No. 4, subdistricts in Montgomery county, be consolidated with the Camargo district. The order was duly and regularly passed, and appeared on the records as follows:

"Mr. Rose moved and Mr. Jacobs 2nd motion to consolidate Jeffersonville and Salem Schools with Camargo school and add two extra rooms to rear of stage of gymnasium."

The plaintiffs alleged that, following the entry of the order above, the members of the board were giving it out by "words, speeches and statements that they intended to abandon and abolish" the schools in subdistricts Nos. 3 and 4, respectively, and to unite them with the Camargo school.

It is alleged that no election "has been held in either of said subdistricts submitting the question of the said proposed and attempted consolidation, or the levying of a tax for transportation to the voters of said proposed consolidated district, and that no provision has been made or proposed for the submission of either of said questions to said voters."

It is then alleged that each of the two named subdistricts, 3 and 4, have more than 50 children of school age, none of whom reside in reasonable walking distance of the Camargo school; that all of them reside more than one mile therefrom, and many of them reside as much as three and five miles from Camargo. An allegation is also made that in case of consolidation "it will be necessary to furnish transportation for said pupils to said school, and if said transportation is not furnished it will be impossible for many of said pupil children to attend school at all."

It is alleged that a great majority of the residents and legal voters of subdistricts Nos. 3 and 4 are opposed to the abolition of the districts and the consolidation, as they desire to keep their subdistricts in status quo.

The usual allegations as to irreparable injury and such as are required by the Code for injunctive relief are made, and the plaintiffs ask that the defendant board be enjoined from consolidating the named districts, and required to maintain schools in subdistricts Nos. 3 and 4.

The board demurred to the petition, and, not waiving demurrer filed answer, in the first paragraph of which denial was made of the material allegations of the petition. They admit the order was in form alleged, but further allege that it was not at all necessary to hold an election to take the sense of the voters on the proposed consolidation or for the purpose of levying a tax for providing transportation of the pupils of the two subdistricts. In a second paragraph the defendants set out at length the existing situation in subdistricts Nos. 3 and 4, as well as in the Camargo district. It is not necessary to quote or refer at length to all the allegations, though it may be pointed out that it was admitted that each of the subdistricts in question contained more than 50 pupil children.

The answer also discloses that on May 19, 1934, before the lower court had taken any action on the cause, the board rescinded its former order, and entered another by which it was proposed to consolidate the same three districts, and in which was fully set out many reasons why the consolidation should be carried forward, such as lack of proper educational facilities; the bad repair of the schoolhouses in districts Nos. 3 and 4; the lack of attendance; lack of sanitation; and such things as would tend to the health, comfort, and educational improvement of the pupils. It was demonstrated that a considerable saving in funds would result. The amended order also made provisions for transportation, showing that such might be provided without submission of the question to the voters.

The plaintiffs below demurred to the answer as amended, and on June 11, 1934, by agreement of parties, the cause was submitted on the demurrers to the petition, and amended answer. The court overruled the

demurrer to the petition, and sustained the demurrer to the answer as amended, and defendants declined to plead further. The court thereupon dismissed the answer as amended and granted the relief sought by plaintiffs in their petition.

It is apparent from a reading of the pleadings that the appellees base their rights on this court's opinion in Knox County Board of Education v. Fultz, 241 Ky. 265, 43 S. W. (2d) 707, 710, while the appellant seemingly based its right to do the things sought to be done on the case of Audas v. Logan County Board of Education, 246 Ky. 534, 55 S. W. (2d) 341, under the impression that the last-named case intended to broaden the explicit rule laid down in the Fultz Case so as to permit consolidation of subdistricts and the transportation of pupils therefrom, without submitting the question to a vote of the people in the affected district under certain circumstances, other than the existence of an emergency, as defined in the Fultz Case.

The Fultz Case is a very carefully written opinion, which took up the applicable sections of the school laws from 1908 down to 1926, the latter being the law controlling here, and after analysis of various pertinent statutes the court came to the unequivocal conclusion that:

"It is apparent from this historical resume of these acts that a consolidation of subdistricts may be brought about either by the action of the board itself or by a submission of the question to the vote of the people of the subdistricts to be consolidated and that the board can only provide for the transportation of pupils out of its general funds when in its judgment such consolidation is more econmical than the creation of an emergency school or when an emergency arises in a subdistrict making it impossible for a school to be taught in that district. In other words, the county board can only provide for the transportation of pupils out of its general funds when, in its judgment, it is more economical to do so than to create a school to accommodate fewer than fifty children or where there are less than twenty-five children to attend a subdistrict school.

"In all other cases where transportation is to be provided in a consolidated school district, it

must come from taxes levied under a vote of the people of the consolidated district authorizing such a tax; and so it follows that where it is proposed to consolidate subdistricts in which there is no emergency school or a subdistrict where there are fewer than twenty-five pupils, if the board intends to provide transportation for the pupils of such a consolidated distrct, it can only do so by submitting the question of whether there shall be a consolidated district and a tax levied by the people for the transportation of pupils to the voters of the proposed consolidated district. In such state of case, where transportation must be provided and the conditions under which the general funds may be used for such purposes are not present, the board cannot consolidate by its own action alone such subdistricts."

The foregoing is a clear, unequivocal, and binding construction of the statutes which authorize consolidation of subdistricts where transportation of pupils must be provided, and the court is not inclined to depart from this ruling, paritcularly here where it is pleaded and admitted that neither of the subdistricts sought to be united with the Camargo district came within the class which would allow their consolidation upon the acton of the board alone. The Whalen v. County Board of Education Case, 239 Ky. 341, 39 S. W. (2d) 475, is distinguished from the Fultz Case, and properly so, because of the fact that in the former the question of transportation was not raised, and the court held that the board had the power, in the exercise of discretion, to authorize the consolidation without a vote.

The Audas Case, supra, did not depart from the controlling decision in the Fultz Case, and there is no conflict between the two, for the reason that in that case the evidence showed that each of the subdistricts proposed to be consolidated with the larger district had less than 50 pupils, and one perhaps less than 25, and in all three the average attendance was less than 25. The court found that it was quite apparent that the three districts were districts to which the term "emergency school" applied. Therefore, the court decided that, if the consolidation were otherwise proper, it could be consummated and transportation afforded without a submission of the proposals to a vote.

Since, in the instant case, it is admitted that both Salem and Jeffersonville districts had residing therein more than 50 pupil children, the districts do not come within the class which would permit a consolidation, where transportation is necessary, without submitting the question of consolidation and tax for transportation purposes to a vote of the people in the proposed consolidated district.

It is pleaded that the average daily attendance in one of the districts is less than 50, but since the statute (Ky. Stats. sec. 4399-6) makes the number of children residing in the district the controlling basis, the average attendance has little bearing on the question. In the other affected district it is shown that the average daily attendance is above 50.

It is argued for appellants that since the Act of the General Assembly of 1934 (chapter 65) has apparently broadened the powers of the county board of education with respect to consolidation of subdistricts, and has provided that the transportation may be paid for out of the general fund or otherwise, no mention being made of taxation, that the action of the Montgomery county board of education was in conformity to that law, and therefore the court should have denied the relief sought.

Conceding that the act of 1934 had the effect of broadening the powers of the board in respect to the matters at hand, we cannot hold that it would control, or have any effect on orders of the board that were made prior to the effective date of the 1934 act.

It appears from the record that the first order of consolidation was made on January 20, 1934. The suit attacking the proposed action of the board under that order was filed May 10, 1934. The answer of the board was filed May 23, 1934, and in this the board set up the amended and detailed order of May 19, 1934.

It appears from an inspection of the Session Acts 1934 (chapter 65) that the law to which appellees refer was approved by the Governor on March 14, 1934. The act did not carry an emergency clause, therefore could not become effective until ninety days after the close of the 1934 session, which would make the effective date about June 14, 1934.

The first order of consolidation and the amended or second order were both made prior to the effective date of the act of 1934, and therefore were to be measured by the laws then applicable; that is by the sections of the statutes with relation to consolidation of districts and transportation of pupils, and as those sections of the statute had been construed by this court. The orders, in so far as any showing was made, were intended to become effective as of the date of passage and entry, and the court cannot now adapt a construction, either as to the orders or the act of 1934, which would have the effect of holding that the orders were prospective, or that the act of 1934 was to retroact and make legal that which was illegal at the time of adoption. The court below was obliged to and did pass upon the effect of the orders by applying the law as it was at the time of their passage, and we see no reason for holding to the contrary.

No law has retrospective effect unless it is made manifest by the language of the act that such effect was intended to be given. Dunlap v. Littell, 200 Ky. 595, 255 S. W. 280; Shanks v. Board of Education of Winchester, 221 Ky. 470, 255 S. W. 1111, and such a construction is rarely adopted unless the law is clearly remedial in its nature.

The court below correctly followed the construction of the statutes in question as placed upon them by this court in the Fultz Case, supra, and this being true, properly sustained the demurrer of plaintiff to defendant's answer and likewise, upon defendant's refusal to plead further, granted the relief sought.

Judgment affirmed.