## Louisville Cooperage Co. v. Rudd.

Dec. 6, 1938.

As Modified on Rehearing Feb. 14, 1939.

722

E. C. WOOTON and D. G. BOLEYN for appellant.

WILLIAMS & ALLEN and LEEBURN ALLEN for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

By her petition, as amended, Docia Rudd sued to recover $4,500 from the Louisville Cooperage Company, as the value of standing timber on a tract of land owned by her and cut and removed 24 years before by the defendant. Plaintiff alleged that at the time she was 12 years of age; had married before becoming 21; and had been ever since a married woman. Several defenses were made. To avoid the plea of limitations, the plaintiff pleaded disabilities of infancy and coverture. A verdict for the sum asked with interest from January, 1914, was returned in favor of the plaintiff. The appeal is from the judgment thereon.

It appears the company purchased the timber from James K. Rose, as the owner, and paid him for it. He had acquired title to the tract from his father, R. G. Rose, by a deed with the following habendum:

"To have and to hold the before mentioned tract of land with all its appurtenances thereunto belonging. To have and to hold free from the claim of said R. G. Rose, his heirs and assigns forever, free from the claims of all persons claiming through and by said Rose. It is hereby stipulated and agreed that said James K. Rose is to have it during his natural life, then to his heirs, if any, if not it reverts back to R. G. Rose if living; if not, to the said James K. Rose's brother and sisters in equal proportion."

James K. Rose is living or was while this suit was pending. It is apparent, we think, that he has only a life estate in the property. The plaintiff is his only child and she has two children. It is not necessary in this case to construe the terms of the deed and determine who are or may be the life tenants' "heirs" within the legal meaning of that term. It is sufficient to say that the plaintiff in this action does not have a vested remainder. Her interest in the land is, at most, only contingent. Cf. Hurst v. Russell, 257 Ky. 78, 77 S. W. (2d) 355.

In Cox v. Corrigan-McKinney Steel Company, 248 Ky. 426, 58 S. W. (2d) 625, we considered the right of contingent remaindermen in property to protect their potential rights. The suit was by a life tenant and contingent remainderman who owned the surface of a tract of land against a company which owned the mineral estate, for damages to the surface resulting from the removal of the subjacent support. We held they could unite and maintain an action for damages, but said: "Whether they may maintain an action for damages to the remainder against a stranger separately from the life tenant is a question not before us." It is now presented.

In that case we pointed out that a contingent remainder is more than a right of expectancy; that it is an existent substantial property interest, capable of being mortgaged, sold and conveyed, and one that ought to be protected. The right of the owner of such an estate before the expiration of the preceding estate to enjoin threatened waste, to set aside a tax deed where the life tenant permitted the land to be sold, and to have his rights adjudicated where there are adverse claimants is shown to have been judicially recognized. It was further noted that all persons living who are contingently

interested must be made parties as representatives of the ultimate owners in a suit to sell property for reinvestment. We found for the decision that a life tenant and contingent remainderman could jointly maintain the action for damages for permanent injury to the property analogous precedent in Whitesides v. Dorris, 37 Ky. 101, 7 Dana 101; and quite specific authority in Rogers v. Atlantic Gulf & Pacific Co., 213 N. Y. 246, 107 N. E. 661, L. R. A. 1916A, 787, Ann. Cas. 1916C, 877, holding that a life tenant could recover damages for injury to land upon the theory that he is trustee in possession for the remainderman. Beyond that, as a more controlling influence, was the danger of delay in postponing—possibly to a remote time when limitations might bar—the right to sue a third person for substantial injury to the property which would extend beyond the life estate.

Since the weight of authority coming down through the years does not sustain the right of a contingent remainderman to maintain an action at law to recover damages for injury to the entire estate, such as the cutting and removing of timber, we have given the subject further consideration. The cases of actions against third parties, not life tenants, are few. Generally they lead back to and rest upon Hunt v. Hall, 37 Me. 363, decided in 1853. That was "an action of the case in the nature of waste," brought under the provisions of a statute. The statement of the case is, in part, that "the defendant justifies his acts upon the estate by a license and permit from the tenant for life." Though not otherwise disclosed in the opinion, it has been regarded as a suit against the purchaser of timber from a life tenant— perhaps a fact ascertained from reference to the statute cited. It was merely declared that the plaintiffs, who took a contingent remainder as children of a deceased daughter of a testator, could not, under the statute, maintain the action while the tenant for life is still living. See, also, Latham v. Roanoke Railroad & Lumber Company, 139 N. C. 9, 51 S. E. 780, 111 Am. St. Rep. 764.

From time to time statutes have been enacted in this state extending to owners of different classes of interest in property the right to maintain actions in relation thereto which did not exist at common law. Thus an owner not in possession may sue to recover damages for trespass and injury committed on the land, includ-

ing the wrongful cutting and removing of trees. Section 2361, Kentucky Statutes; Meehan v. Edwards, 92 Ky. 574, 18 S. W. 519, 13 Ky. Law Rep. 803. One who has a remainder or reversion in fee simple after an intervening estate for life may maintain an action against a tenant for life or years and recover compensation and punitive damages for voluntary waste. Sections 2328, 2329, Kentucky Statutes. Likewise, a co-tenant may maintain such an action against a tenant or parcener for selling timber from the common land without consent. Section 2332, Kentucky Statutes; Winchester v. Watson, 169 Ky. 213, 183 S. W. 483. But these statutes have been consistently construed as not authorizing a contingent remainderman to maintain an action for waste against a life tenant because it could not be told then whether he would suffer any injury. Fisher's Ex'r v. Haney, 180 Ky. 257, 202 S. W. 495. The right of a contingent remainderman to maintain such action against a third person must exist outside the statutes. They are helpful, however, in showing the development away from the ancient common law. The queston is to be determined by what we may call modern common law and general equitable principles.

The caution of the courts in departing from the established practices, more than reason, it seems to us, has restrained them generally from extending the right of contingent remaindermen to recover damages for permanent and substantial injury to the property—possibly to the extent of destroying the most valuable part of it. Mr. Simes, in his work on Future Interests, Section 625, following the statement of the right of the owners of contingent remainder in fee simple to an injunction to prevent threatened waste, says:

"It is also clear that, when suing for himself alone, he is not entitled to damages. Probably, at first, this conclusion was reached because the contingent remainder was thought of, not as an existing thing, but as a mere possibility. Today, however, for most purposes the courts regard the contingent remainder as having present existence. But there is still justification for denying him an action for damages. His interest may never become possessory, and any estimate of damages would involve a large element of speculation. Moreover, since by hypothesis, his is a remainder after a life estate, he

need not wait for an indefinitely long period of time until his estate becomes possessory and the extent of the damage can be accurately determined. It is true, if his remainder is indestructible, it may vest after the life tenant is dead. But, being a contingency, which could take effect by the time the life tenant dies, it will at least happen or fail to happen soon thereafter in most cases.''

The latter sentences appear to be but comment of the learned author. He seems to have lost sight of what happens if the vesting of the remainder does not occur until perhaps a generation after the injury was done. In most cases the wrongdoer is not to be found; if found, the case is too stale for prosecution.

The author cites in support of the first statement among other cases, Brashear v. Macey, 26 Ky. 89, 3 J. J. Marsh. 89. That was a suit against the owner of a life estate and others to prevent waste and to recover damages. The court, deeming the bill to enjoin waste a peculiarly appropriate remedy because the injury to the plaintiffs was prospective and contingent, stated that no action at law could be maintained for the waste. It was by way of comment that the court said:

"Nor was there any error in refusing to decree damages for waste which had been committed. We are aware that cases may be found in the British chancery, on which the chancellor, on an application for injunction and relief has decreed damages for waste which had been committed. This however, is, at least, questionable doctrine, when there may be a legal remedy."

A year later, in Loudon v. Warfield, 28 Ky. 196, 5 J. J. Marsh. 196, the court wrote:

"Indeed, the proceeding, by bill in chancery, seems, according to the modern practice, not only to have superseded the writ of estrepement [an ancient common law process to prevent waste] but to supply to a certain extent, the place of the action of waste, for it is said, that where a bill is filed for an injunction to stay waste, and waste has been already committed, the court, to prevent multiplicity of suits, will not oblige the party to bring an action at law, but will decree an account and satisfaction

for what is passed." See, also, Smith v. Mattingly, 96 Ky. 228, 28 S. W. 503, 16 Ky. Law Rep. 418.

In Watson v. Wolff-Goldman Realty Company, 95 Ark. 18, 128 S. W. 581, Ann. Cas. 1912A, 540, damages were awarded in an equitable proceeding to contingent remaindermen, the damages being impounded by the court to await the determination of the contingency. Said that court:

"If a contingent remainderman has right to appeal to a court of equity for the preservation and security of the property to the end that it may be forthcoming at the termination of the life estate with like reason, he should have some remedy for waste already committed. Neither the life tenant nor his grantee has the right to commit waste, and if necessarily follows that they should not be entitled to, or enjoy, the fruits of their wrongdoing. As we have already seen, the contingent remainderman has no remedy at law in such cases, and it is obvious that, if he cannot obtain relief in equity, he must suffer irreparable injury. Two of the cardinal principles of chancery jurisprudence are that equity will not suffer a wrong to be without a remedy, and equity looks to the substance, rather than the form."

Mr. Simes thus comments on that decision:

"It would seem that, if, as is believed, the real reason why a contingent remainderman cannot recover damages is, not because his interest is a mere expectancy, but because it is uncertain what the damages will be, then the principle of this decision is sound; damages can be awarded on behalf of all owners of future interests, and, until the determination of the contingencies, the amount will be held by the court. In the case cited, damages were allowed against a possessory life tenant for waste, but it is believed the same principle would be applicable to an action against a third party for injury to the land."

While this text and the supporting authorities recognize that recovery of damages in such a case may be had in equity, we think under our practice an action at law may be maintained therefor with equity stepping in to conserve whatever may be recovered for those entitled thereto when title shall have vested.

Under our Civil Code of Practice (Section 4), there is but "one form of action." It may be equitable or ordinary (Section 6), the former being those of which the courts of chancery had jurisdiction before the effective date of the Code, August 1, 1851, and the latter all others. But the Code did not abrogate the established distinctions between courts of law and courts of equity, and only provided for a transfer to the right court if brought in the wrong one, or tried and decided as if brought in the proper one. Fraley v. Peters, 75 Ky. 469, 12 Bush. 469. In the practice where there is only one judge functioning as a common law judge and chancellor, the distinctions of the former age are not always strictly observed. Since the question of damages for injury to property is ordinarily and better determined by a jury, we see no reason why, under modern practice, an action brought to recover those damages for whomsoever entitled should not be ascertained in the same manner by an action at law, with the court exercising equity powers to protect and preserve any recovery. We have an analogue in the authority of next friend of an infant to sue for wrongs done him although he cannot control or collect the recovery, it being collectible only by a guardian. Section 35, Civil Code of Practice, Ambrose v. Graziana, 197 Ky. 679, 247 S. W. 953.

It was indicated, though not definitely declared, in the Cox Case by the quotation from Rogers v. Atlantic, Gulf & Pacific Company, supra, that if any sum should be recovered in the action, the court should protect the rights of those who ultimately may enjoy it as in substitution of the property damaged or destroyed, and should make such orders as would protect the defendant from further liability. But unlike the situation in the Cox Case, the entire estate in the property is not represented here. We have only the contingent remainderman suing the alleged wrongdoer for injury to the entire estate, the character of which injury reaching long past the period of the life estate. The owner of that life estate was not a party to the action. It is inferred that he had sold the timber and pocketed the proceeds. If a person united in interest will not join as a plaintiff, he may be made a defendant. Section 24, Civil Code of Practice. As under the Code provisions (Section 491, 491a) for selling land for reinvestment where there is a contingent remainder, the owner of such particular estate may join in having that done (McClure v. Crume,

141 Ky. 361, 132 S. W. 433) or if he does not he must be made a party defendant. Walton Bank & Trust Company v. Glinn, 161 Ky. 60, 170 S. W. 511. It seems to us the same practice should be followed in a case of this kind. The court could not determine this controversy without the life tenant being a party and should have required that he be brought in or else have dismissed the petition. Section 28, Civil Code of Practice.

Other contingent remaindermen should also be made parties. If recovery be had for the injury done the property as alleged, the court, in the exercise of its equity jurisdiction, should make appropriate orders in relation to the life tenant's interest and secure or conserve the recovery for the ultimate owners. Such judgment and orders will also protect the defendant from further liability.

In the instant case there is presented the question of the effect of an act of 1934 (chapter 44) amending Section 2525 of the Statutes, by withdrawing coverture as a disability saving or prolonging the operation of the several statutes of limitation. By its express terms the amendment did not go into effect until January 1, 1937, a little less than three years after its enactment. As above stated, the defendant pleaded the statute of limitations, Kentucky Statutes, Section 2506, and the plaintiff responded with a plea of continuous disability from the time her cause of action accrued; namely, infancy, succeeded by her coverture, since she had married before becoming twenty-one years of age, and is still a married woman. The suit was filed March 22, 1937. The question is whether the withdrawal as of January 1, 1937, of the extra time allowed a married woman affected one whose right to maintain a cause of action existed at the time, or whether the amendment should apply prospectively to causes of action accruing thereafter. A construction giving retroactive effect to a statute is not favored. Dean v. Board of Education of Harrodsburg, 247 Ky. 553, 57 S. W. (2d) 477. Hence unless the intention is manifested that a legislative act shall have a retrospective effect it is not so regarded. Dunlap v. Littall, 200 Ky. 595, 255 S. W. 280; Board of Education for Montgomery County v. Greer, 259 Ky. 97, 82 S. W. (2d) 196; Webster County Board of Education v. Hocket, 267 Ky. 498, 102 S. W. (2d) 1018. A more liberal attitude is taken where the new statute relates to

remedies existing or created. Ficke v. Board of Trustees of Erlanger Consolidated Graded School District, 262 Ky. 312, 90 S. W. (2d) 66. This applies to statutes of limitation (American Oak Leather Company v. C., C., C. & St. L. Railroad Company, 216 Ky. 611, 288 S. W. 347), though the legislature cannot remove a bar of limitation which has become complete, nor disturb existing claims without allowing a reasonable time to bring actions thereon. Heath v. Hazelip, 159 Ky. 555, 167 S. W. 905. Had the amendment of Section 2525 of the Statutes become effective in due or ordinary course of legislative acts, there might be room for doubt as to where the deadline lay, but it expressly provides that a married woman enjoying the favor or indulgence should have nearly three years longer. She was given warning that at the end of that period it would be too late to plead such disability. The plaintiff in this action did not file her suit until three months after her right to plead disability of coverture had ended. We are of opinion, therefore, that the defendant's plea of limitations was good and the trial court should have so adjudged.

The judgment is reversed.