## GILLIS et al. v. CURD.
### No. 8419.

Circuit Court of Appeals, Sixth Circuit.
Feb. 10, 1941.

H. C. Gillis, of Williamsburg, Ky., for appellants.

E. L. Stephens, of Williamsburg, Ky., for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

Appellants appeal from a decree denying them $1,740 or any part thereof, proceeds of a tract of land condemned by the United States for inclusion in the Cumberland National Forest.

In 1934, appellee, T. J. Curd, optioned to the United States, for $6 per acre, 354 acres of land in Whitley and McCreary Counties, Kentucky. The option was exercised and the land surveyed in two tracts, referred to in the record as tract 1408d, containing 303 acres, and tract 1408d-1, containing 51 acres. The latter tract is not in controversy.

Appellants claimed title to the lands, which were condemned pursuant to the laws of the United States. Commissioners were appointed and found appellee, T. J. Curd, to be the owner of the lands and valued them at $6 an acre, the option price. On July 28, 1937, appellants filed exceptions to so much of the Commissioners' report as found appellee to be the owner, but consented to the condemnation at the price fixed by the Commissioners. The proceeds were paid into the court's registry and appellants filed a cross-claim against appellee praying they be adjudged the owners of the lands and entitled to the proceeds. Appellee, in reply to this cross-claim, plead that he, and those under whom he claimed, had been in continuous possession of the lands for more than thirty years and plead in bar of appellants' claim the fifteen-year Statute of Limitations of the Commonwealth of Kentucky (Section 2505, Baldwin's Edition of Carroll's Kentucky Statutes, 1936) and the thirty-year Statute of Limitations (Section 2508, Baldwin's Edition of Carroll's Kentucky Statutes, 1936).

Appellants, by rejoinder to the reply, plead that appellants, Nora H. Gillis and Mrs. Theo R. Terry, mother of appellants, Edith H. Terry, Douglas W. Terry and James M. Terry, were married women and the Statute of Limitations was inapplicable to them because of the provisions of Section 2506, Baldwin's Edition of Carroll's Kentucky Statutes, 1936.

The law and facts were submitted to the court without the intervention of a jury and the court decreed appellee had acquired title to all the lands by adverse possession and was entitled to all the proceeds; hence this appeal.

Appellants concede appellee is entitled to the proceeds for 64 acres, which leaves in controversy 250 acres, or $1,740. The land in question was part of several thousand acres granted by the Commonwealth of Kentucky to Alfred L. Clapp by a patent issued on June 3, 1874, upon a survey dated October 10, 1873. In 1896, R. D. Hill, a resident of Williamsburg, Whitley County, Kentucky, and R. N. Archer, a resident of Cincinnati, Ohio, jointly acquired by deed the lands covered by the Clapp patent in Whitley County, Kentucky, out of which a part of McCreary County was subsequently created. Hill died in 1906 and devised his

one-half interest in the Clapp patent to his daughters, appellants Nora H. Gillis and Theo R. Terry, mother of appellants Edith H. Terry, Douglas W. Terry and James M. Terry. Theo R. Terry died intestate, on June 16, 1933, and left surviving her as next of kin and heirs at law, appellants Edith H. Terry, Douglas W. Terry and James M. Terry. On April 16, 1907, appellant H. C. Gillis, husband of his coappellant, Nora H. Gillis, and appellant J. E. Terry, father of his coappellants, Edith H. Terry, Douglas W. Terry and James M. Terry, acquired jointly the interest of R. N. Archer in the Clapp patent.

Appellee concedes that appellants have a paper title to the lands in question and are entitled to the proceeds of the sale, unless appellee has acquired title by adverse possession.

Under the statutory laws of the Commonwealth of Kentucky (Section 2505, Baldwin's Edition of Carroll's Kentucky Statutes, 1936), an action for the recovery of real property can be brought only within fifteen years after the right first accrued to the plaintiff or to the person through whom he claims. Under Section 2508 of the same Statute, same edition, it is provided the period within which an action for recovery of real property may be brought shall not be extended beyond thirty years from the time when the right first accrued to the plaintiff or any person through whom he claims because of any death or the existence or continuance of any disability whatever.

■■■  According to the settled doctrine of the above statutes as declared by the Court of Appeals of Kentucky, when applied to lands in a community where fences are not customary, a person, by entering upon a tract or parcel of uninclosed land in the name of the whole, may gain title to all of it by adverse possession. When such person settles within a large body of wild, uncultivated, uninclosed, vacant land, his title by adverse possession, and those claiming under him, ripens to the following boundaries: (1) to buildings, clearings or inclosed lands where maintained for the statutory period, (2) to boundaries kept marked for such period and in such way as to give to the owner of the land, whether it be the state or an individual, notice that it was a marked boundary and that some person was claiming to be in hostile possession of the land therein, (3) by putting to record

in the County Clerk's office of the County where the land is located for the statutory period, a deed describing its boundaries by natural or artificial objects so that it can be run by a surveyor, although the boundary described in the deed need not be sufficient to constitute a well-marked boundary without the deed.

■  As a prerequisite to the application of the above principles, the settler or those claiming under him must commit visible, notorious acts of ownership for the statutory period within the boundaries described by deed put to record or within the marked boundaries of the land. Burt & Brabb Lumber Co. v. Sackett, 147 Ky. 232, 144 S.W. 34; New York-Kentucky Oil & Gas Company v. Miller, 187 Ky. 742, 220 S.W. 535.

The single issue here presented is whether, within the foregoing concepts, the substantial evidence shows appellee has obtained title adversely to the lands to which appellants have a paper title.

■■  In 1824, L. D. Stealy was granted a patent by the Commonwealth of Kentucky for a tract of 100 acres, joining the tract in controversy on the east. Later, the exact date not shown in the record, Mark White acquired from Stealy his patented lands and established a homestead on them where he lived until his death in June, 1893. He left seven children surviving him. In April, 1899, White's children filed a partition suit in the Whitley County, Kentucky, Circuit Court, in which action it was stated that Mark White held legal title to five tracts of land aggregating 450 acres and that prior to his death he had divided his lands among his children and set apart and placed in possession the respective lands to each of them. So far as the present record shows, no papers were filed in the partition action showing Mark White had title of record to any of the lands except the L. D. Stealy, 100 acres. On February 9, 1901, pursuant to the orders of the court in the partition action, the Master Commissioner was directed to, and did, convey the tract of land in controversy to N. N. White, one of Mark White's children. The Master Commissioner's deed was recorded in the office of the Clerk of the County Court of Whitley County, Kentucky, on March 19, 1909. The outer boundaries of this conveyance were described by natural or artificial objects so they could be run by a surveyor. There were excluded from the

conveyance within the boundaries 46 acres which had theretofore been surveyed by A. S. Patrick for a patent, which patent was not granted by the Commonwealth.

There is substantial evidence in the record that N. N. White had acquired the Patrick land of 46 acres in an exchange and had lived on it for many years prior to the institution of the partition suit. The judgment in that suit, as well as the Commissioners' report, shows that this Patrick tract was owned by N. N. White before the suit was instituted.

Appellants insist that in the partition suit, the Patrick tract was excluded from the N. N. White deed because it was a part of the land set aside to Mrs. Bryant, widow of Holden White, a son of N. N. White, and their children, and not because he had theretofore acquired it from Patrick.

In the partition suit, it was alleged that Mark White had in his lifetime set aside 75 acres of the land therein described to his son, Holden White, and had placed him in possession thereof, to occupy and cultivate as his own. In the judgment directing the Commissioners to divide the lands and the Master Commissioner to make a deed, it was provided that the Commissioners were to set apart to Holden White the 75-acre tract of land on the Cumberland River adjoining the land of A. S. Patrick and beginning on a hickory in the gap of a ridge, running hence nearly north down the hill to a branch, thence with the branch to a river and thence with and up the river to the A. S. Patrick tract and thence with his line to the beginning.

The Commissioners allotted the lands to the Holden White heirs as directed in the judgment and to their report appended a map showing the location and boundaries thus allotted which lands were not within the boundary of those in question. The Master Commissioner's deed, however, described the A. S. Patrick tract which was within the boundary of the land in question, but included none of the land directed to be conveyed to Holden White's heirs by the judgment.

At the time of his death, Holden White lived on the tract of land described in the partition judgment and his wife and children continued to live on it after his death. John S. White, son of Holden, by deed acquired the interest of his two brothers and died while living on the land, leaving Sarah Lou White, nee Burnett, surviving, as his heir at law. She discovered the land on which she was living was not within the boundary stated in the Commissioner's deed but was approximately a half mile from it and in 1933 she intervened in the old partition suit of 1901 and asked that it be redocketed, which was done, the court entering a judgment directing that the Commissioner's deed be revised to conform to the description of the land set out in the Commissioners' report in the partition suit. A new Master Commissioner's deed was accordingly executed, correcting the mistake in the fomer one.

The testimony relating to the correction in the description of the deed to Holden White was competent and the rule applies that oral testimony is admissible to correct a mistake whereby the writing fails to express the actual agreement and prove the modification necessary to be made to express the real intention of the parties.

The evidence tendered by the appellants was not superior to and did not destroy the weight of the oral testimony that N. N. White had acquired from A. S. Patrick the 46 acres excluded in the Master Commissioner's deed to him in the partition suit. The evidence fairly shows that it was not intended by the parties that this acreage should be included in the lands allotted to Holden White's heirs.

On August 18, 1902, N. N. White and wife, executed a mortgage to Josephine Curd which was recorded January 10, 1903, to secure an indebtedness of $700. The description of the lands in the mortgage followed the Master Commissioner's deed to N. N. White and excluded the A. S. Patrick tract. On March 31, 1909, N. N. White and his wife, by deed recorded June 23, 1909, conveyed the lands described in the mortgage to Josephine Curd in settlement of the debt. On March 18, 1920, Josephine Curd conveyed the lands to her son, T. J. Curd, which deed was recorded March 19, 1920, and did not except the A. S. Patrick tract. It will thus be seen from the foregoing recitals that on March 19, 1909, N. N. White had on record a deed describing the lands in question exclusive of the A. S. Patrick tract and on March 19, 1920, appellee, T. J. Curd, had on record a deed describing all the land in question.

It is clear from the evidence that as early as March 18, 1920, appellee had of record a deed describing all the lands in question and if he or those through whom

he claimed committed visible, notorious acts of ownership for the statutory period within the boundaries described by deed put to record, for more than fifteen years prior to July 28, 1937, the date appellants filed their cross-claim in this action, his adversary title is superior to appellants' paper title.

There is substantial evidence that N. N. White settled on the tract about 1885 and lived there in the A. S. Patrick house prior to the death of his father, Mark White, and had cleared about 40 acres and when he moved away his son, Albert White, who had married, lived there for about five years and continued to cultivate the land. From that time on, several persons at various dates occupied the house and cultivated part of the land down to the time it was deeded to Josephine Curd in 1909, after which the house and most of the fencing burned. From 1917, Frank Richardson, whose farm adjoined and who for a short time rented the land, continued to look after the property for the Curds and at different periods fenced about 200 acres. He continued as caretaker, for which he was paid, until the property was purchased by the Government.

In 1912, the Curds sold the white oak timber on the whole acreage and it was cut and made into staves and lumber from a mill on the premises.

Between March 19, 1920, and March, 1937, there were short periods in which no person lived on, used or occupied the lands in question. Appellant argues from this that appellee abandoned the premises.

While no principle of law of adverse possession is more firmly settled in Kentucky than that requiring continuous and uninterrupted possession for the full statutory period in order to ripen an adverse claim into a legal title, an exception to the rule is just as well recognized; that a temporary break or interruption, not of unreasonable duration, does not destroy the continuity of the adverse possession and where the periods of vacancy are occasioned by change of possession or by the substitution and possession of one tenant for another which are not of longer duration than is reasonable in view of the character of the land and the uses to which it is adopted and devoted, they do not constitute interruption of possession destroying its continuity in legal contemplation where there is no intention to abandon. Martin v. Hall, 152 Ky. 677, 153 S.W. 997, L.R.A.1918A, 1041. The case at bar is within this exception.

There is substantial evidence that appellee, and those through whom he claims, committed visible and notorious acts of ownership for the statutory period within the boundaries of the lands described in the Master Commissioner's deed to N. N. White.

On March 10, 1908, appellants put a tenant in possession of approximately 1 acre of the land covered by the Clapp patent, a considerable distance away from the Curd land and from then until 1937 it had been so occupied. From this fact appellants urge on us that the applicable rule is that if the true owner be in possession of part of the land claiming title to the whole, then his seizin extends by construction of law to all of the land not in the actual possession or occupancy of another by inclosure or otherwise, even though such other person has entered into the land under color of title and is claiming ownership coextensive with his colorable deed or title.

The principle urged by appellants applies only where there are conflicting deeds or patents and the senior in title enters upon and holds the actual possession of a part of the lands covered by the junior in title. Whitley County Land Company v. Lawson, 94 Ky. 603, 23 S.W. 369. The occupancy of appellants being on lands covered by the Clapp patent, but not on lands covered by appellee's deed, the rule urged is inapplicable.

Appellant, Nora H. Gillis, is and has been a married woman since September, 1906. Mrs. Theo R. Terry, the mother of appellants, Edith H. Terry, Douglas W. Terry and James M. Terry, was married in 1906 at the time of the death of her father and so continued until the date of her death, June 16, 1933.

Appellants urge that because of the disability of coverture, the Statute of Limitations is inapplicable to appellants, Nora H. Gillis, Edith H. Terry, Douglas W. Terry and James M. Terry.

Prior to 1934 (Carroll's Kentucky Statutes, Baldwin's 1930 Edition, Sec. 2525), the statutory laws of the Commonwealth of Kentucky provided in substance that if at the time the right of any married woman accrued to bring an action for the recovery of real property, then she, or those claiming through her, though the period of

fifteen years had expired, might bring the action within three years after the removal of the disability.

The General Assembly of the Commonwealth of Kentucky (Acts of the General Assembly, Commonwealth of Kentucky, 1934 Session, chap. 45) amended Section 2506 of the Statutes by withdrawing coverture as a disability, saving or prolonging the operation of the several statutes of limitation. By express terms the amendment did not go into effect until January 1, 1937. Appellants filed their exceptions herein July 28, 1937, approximately eight months after the statute became effective.

Their defense of coverture is unavailing. The Kentucky Court of Appeals has ruled that the amendment to the Statute applies retroactively to causes of action accruing before its passage. Louisville Cooperage Co. v. Rudd, 276 Ky. 721, 124 S.W.2d 1063.

Judgment affirmed.